UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GILEAD SCIENCES, INC., *et al.*,

                Plaintiffs,

v.

CITY PLUS CARE PHARMACY INC. D/B/A
HEAL THE WORLD PHARMACY, *et al.*,

                Defendants.

Case No. 25-cv-1469 (RER) (RML)

FILED *EX PARTE* AND UNDER SEAL
PURSUANT TO 15 U.S.C. § 1116(d)
AND COURT ORDER (DKT. 15)

---

### PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF ORDER TO SHOW CAUSE

Plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC, (together, "Gilead" or "Plaintiffs"), by and through undersigned counsel, respectfully move the Court for an Order to Show Cause why Defendants should not be held in contempt for their failures to comply with the Seizure Order (Dkt. 17) and Asset Freeze Order (Dkt. 18), which were entered by this Court on March 17, 2025, and served upon Defendants during the execution of the Seizure Order on March 19, 2025. Those orders require Defendants "immediately upon receipt" of the orders to produce documents and information crucial to preventing more counterfeit medicines reaching the hands of innocent patients, as well as preventing further irreparable harm to Gilead. The Defendants are in willful defiance of those orders and have produced nothing. They should be ordered to appear in person, along with their counsel, as soon as possible for a show-cause hearing on why they should not be held in contempt.

1

## PROCEDURAL POSTURE AND FACTUAL BACKGROUND

On March 17, 2025, upon Gilead's application and the evidence submitted therewith, this Court entered, among other things, a Seizure Order (Dkt. 17) and Asset Freeze Order (Dkt. 18), each requiring Defendants to make certain disclosures "immediately upon receipt of the order." Dkt. 17 at 5-6; Dkt. 18 ¶ 5. Specifically, the Seizure Order requires that:

> ***immediately upon receipt of this Order*** Defendants shall disclose to Gilead's attorneys and investigators the following information concerning their purchases and/or sales of any product bearing any of the Gilead Marks product from March 19, 2022 to the present: (1) the Drug Supply Chain Security Act pedigree documentation; (2) the price and quantity of each purchase or sale; (3) the product, including the specific type or variety of product; (4) the lot numbers; (5) the contact information, including names, addresses, email addresses, and telephone numbers of all associated individuals and/or companies from which Defendants have purchased or to whom Defendants sold the products....

Dkt. 17 (Seizure Order) at 5-6 (emphasis added). The Seizure Order further requires "Defendants immediately upon receipt of this Order" to "provide to Gilead's attorneys a summary document or documents giving the location or locations of any merchandise bearing any of the Gilead Marks that is in the possession, custody, or control of any of the Defendants so that merchandise can be seized pursuant to this Order." *Id.* at 5.

Additionally, the Asset Freeze Order requires that:

> ***Immediately upon receipt*** of this Order, each **Defendant** shall disclose to Plaintiffs' attorneys:
> a. a list of all assets held by, for, or on account of the Defendant, including any account for which they have signatory authority, in any bank, brokerage house, or financial institution, including account title, account number, and balance;
>
> b. a list of all real properties the Defendant owns or in which they presently have a legal interest; and
>
> c. a list of all real properties the Defendant previously owned or in which they previously had a legal interest from March 19, 2022 to the present.

2

Dkt. 18 (Asset Freeze Order) ¶ 5 (emphasis added).[1]

Plaintiffs executed the Seizure Order at Heal the World on March 19, 2025. Pursuant to the Seizure Order, Gilead "deliver[ed] true copies [of the Seizure Order, the papers upon which it was granted, and the summons and complaint in the action] to any person of suitable age found at the premises...." Dkt. 17 (Seizure Order) at 10. At the seizure, Gilead served physical copies of all its papers, including the Seizure Order and Asset Freeze Order, on Defendants by leaving those copies with Defendant Hamza Chaudhary, who was working at the pharmacy at the time of the seizure and was present throughout. Although not required, Gilead also arranged for by-hand service of the papers upon the individual Defendants at their residence the following day, March 20, 2025. Declaration of Timothy A. Waters ("Waters Decl.") Exhibit A (Affidavit of Service).

At the March 19 seizure, Gilead located and seized counterfeit BIKTARVY® with entirely fake labels. *Id.* ¶¶ 4-8. The pharmacy had two bottles of BIKTARVY® in stock on the day of the seizure, both of which were counterfeit – and one of which already had a patient label applied and was sitting in a paper bag, awaiting the patient to pick it up. *Id.* Upon careful examination, Gilead was able to identify three telltale signs at the seizure that the medicines were counterfeit. First, the labels had a misspelling: on the side of the bottle, "Biktarvy" was

---

[1] The TRO Order (Dkt. 16) further requires that "Defendants, and their principals, agents, officers, directors, members, servants, employees, successors, assigns and all other persons in concert and participation with them" "shall turn over to Plaintiffs or any person or entity designated by Plaintiffs all counterfeit Gilead products in their possession, custody, or control to be held by Plaintiffs until further order of this Court." Defendants have not turned over any counterfeit Gilead products other than those Gilead seized upon execution of the Seizure Order. Gilead reserves all its rights and remedies to the extent there are additional counterfeits that Defendants have failed to turn over pursuant to the TRO Order.

misspelled as "Bliktarvy." *Id.* ¶ 5. Second, Gilead noticed faint markings around the corners of the label, seemingly placed there to aid the counterfeiters in placing the fake label on the bottle. *Id.* ¶ 6. Third, the two bottles had identical serial numbers, whereas authentic bottles each have a unique serial number. *Id.* ¶ 7. Photographs of the bottles (with red circles added) are below:




*Id.* ¶ 8.

After the seizure concluded, Gilead did not hear from any of the Defendants until March 26, 2025, when counsel from the Trenk Isabel law firm contacted Gilead's counsel, stating they had just been retained by the Defendants in this action. *Id.* ¶ 9. On March 26, 27, and 28, Plaintiff's counsel and defense counsel had several amicable conversations, including negotiations to adjourn the preliminary injunction hearing and release a set amount of cost-of-living and business expenses from the frozen funds. *Id.* ¶ 10. Counsel for Gilead volunteered to draft stipulations adjourning the hearing and amending the asset freeze to release the agreed-upon funds, and led a call to chambers to alert the Court to the urgent relief being sought by

Defendants. *Id.*

The stipulation modifying the asset freeze submitted by Gilead and Defendants specified that "Defendants have accepted service of all documents filed on or before March 17, 2025 in this action, and agree not to contest service." Waters Decl. Exhibit B (Asset Freeze Modification Order). The stipulation the parties submitted adjourning the preliminary injunction hearing expressly stated "the Defendants agree to produce all documents, materials, and information they are required to produce under the Seizure Order, the TRO Order, and the Asset Freeze Order by the deadlines set forth in each respective order…." *Id.* Ex. C. (TRO Extension Order). Counsel for Gilead pressed the latter point during meet-and-confer conversations: Gilead understood that counsel had recently been retained, but emphasized that the documents and information required to be "immediately" produced needed to be in Gilead's hands within the next few days. *Id.* Waters Decl. ¶ 11.

Defendants failed to produce any documents or information after those stipulations were submitted and so-ordered by the Court. *Id.* ¶ 12. On April 2, 2025, Gilead wrote a demand letter to Defendants, emphasizing the threat to patient safety posed by the counterfeits, reiterating the Defendants' production obligations under the Seizure Order and Asset Freeze Order, and stating Gilead's intent to move for contempt if the Defendants did not produce the requisite information by Friday, April 4. *Id.* Ex. D. Defendants simply ignored Gilead's correspondence. *Id.* ¶ 14. To date, they still have not produced a single document or disclosed a single asset as required by this Court's Orders. *Id.*

## ARGUMENT

Gilead has been more than reasonable in accommodating Defendants' requests and providing counsel time to come up to speed. Plaintiffs' counsel put aside other pressing work to

help Defendants obtain the emergency relief they sought from the TRO Order and Asset Freeze Order, and did so on the express condition that Defendants would promptly comply with this Court's orders to "immediately" produce documents and information. But now that the Defendants have gotten what they wanted, they have simply stopped responding to Gilead, and have produced nothing.

This is a case about potentially dangerous counterfeit HIV medicine. Gilead found such counterfeits on Heal the World's shelves – and if Gilead had not executed the Seizure Order when it did, those counterfeits would now be in the hands of innocent patients. Gilead urgently needs to know where those counterfeits came from and how many other counterfeits have already been dispensed to patients. For the Defendants to simply flout this Court's orders – especially after they promised to provide that information in order to get the emergency relief Defendants wanted – is unacceptable. Their delay tactics are putting patients at risk. They must be held to account.

"A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.' It need not be established that the violation was willful." *Paramedics Electromedicina Comercial, Ltda v. Ge Medical Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995); *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir.1984)).

There can be no question that the Defendants are in contempt. The relevant language of the Seizure Order and Asset Freeze Order, quoted in full above, is clear and unambiguous, and the Defendants did not claim otherwise when they promised to comply with those Orders in their

6

stipulation. It is beyond dispute that the Defendants have failed to comply: they have produced nothing at all. And for the same reason, there can be no doubt that they have not diligently attempted to comply: any diligent, reasonable attempt would have resulted in, at minimum, *some* information about their transactions in Gilead-branded medicines, and *some* information about Defendants' assets. But they have produced *nothing* over the course of 19 days, and have ignored Gilead's attempts to get them to comply. Although willfulness is not required to prove contempt, this record shows that the Defendants are in fact willful contemnors.

Gilead respectfully requests that the Court schedule a show-cause hearing and **order the individual Defendants and their counsel to appear in-person at that hearing**, so that they can face the Court directly and explain themselves – and, in turn, personally hear what the Court has to say. Gilead believes that being ordered to appear in a federal courtroom will materially assist in impressing upon the Defendants the serious nature of this lawsuit and the serious nature of their obligation to comply with this Court's orders.

Upon a finding of contempt, the Court should issue whatever sanctions it sees fit, and warn the Defendants that continued noncompliance will result in additional sanctions, up to and including imprisonment, until they comply. *See Shillitani v. United States*, 384 U.S. 364, 368 (1986) (civil contemnors may be imprisoned until they comply with the orders of the Court).

Dated: New York, New York
April 7, 2025

                                                        PATTERSON BELKNAP WEBB & TYLER LLP

                                                        By: _____
                                                             Geoffrey Potter
                                                             Timothy A. Waters
                                                             Anna M. Blum
                                          1133 Avenue of the Americas
                                          New York, NY 10036-6710
                                          T: 212-336-2000
                                          F: 212-336-2222
                                          E: gpotter@pbwt.com
                                                   twaters@pbwt.com
                                                   ablum@pbwt.com

                                          *Attorneys for Plaintiffs*
                                          *Gilead Sciences, Inc. and Gilead Sciences*
                                          *Ireland UC*

## CERTIFICATION OF WORD COUNT COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law contains 1,878 words (excluding the caption and signature block), and that I have relied upon Microsoft Word's word count for purposes of this certification.

Geoffrey Potter