UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GILEAD SCIENCES, INC., *et al.*,

          Plaintiffs,

v.

CITY PLUS CARE PHARMACY INC. D/B/A
HEAL THE WORLD PHARMACY, *et al.*,

          Defendants.

---

Case No. 25-cv-1469 (RER) (RML)

FILED *EX PARTE* AND UNDER SEAL
PURSUANT TO 15 U.S.C. § 1116(d)
AND COURT ORDER (DKT. 15)

## DECLARATION OF TIMOTHY A. WATERS

TIMOTHY A. WATERS, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am a partner of the law firm Patterson Belknap Webb & Tyler LLP, counsel for plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC (together, "Gilead").

2. I make this declaration in support of Gilead's Motion for an Order to Show Cause why Defendants should not be held in contempt for their failures to comply with the Seizure Order and Asset Freeze Order issued in this action.

3. On March 19, 2025, I attended the execution of the Seizure Order seizure at City Care Plus Pharmacy Inc. d/b/a Heal the World Pharmacy ("Heal the World").

4. The pharmacy had two bottles of BIKTARVY® in stock on the day of the seizure: one sitting on the shelf among other medicines kept in alphabetical order, and one with a patient label already applied and sitting in a paper bag, awaiting patient pickup. I was able to determine both of them to be counterfeit on the spot based on the following observations.

5. I observed that the labels had a misspelling: on the side of the bottle, "Biktarvy" was misspelled as "Bliktarvy."

6. I further observed faint markings around the corners of the label, seemingly placed there to aid the counterfeiters in placing the fake label on the bottle.

7. I also observed that the two bottles had identical serial numbers. My understanding is that each authentic bottle of BIKTARVY® has its own unique serial number.

8. True and correct photographs of the bottles (with red circles added) that I took at the seizure are below:




9. After the seizure concluded, my firm did not hear from any of the Defendants until March 26, 2025, when counsel from the Trenk Isabel law firm contacted me, stating they had just been retained by the Defendants in this action.

10. On March 26, 27, and 28, defense counsel and I had several amicable conversations, including negotiations to adjourn the preliminary injunction hearing and release a set amount of cost-of-living and business expenses from the frozen funds. I volunteered to draft stipulations adjourning the hearing and amending the asset freeze to release the agreed-upon

funds, and I led a joint call to chambers to alert the Court to the urgent relief being sought by Defendants.

11. During our meet-and-confer conversations, I emphasized that while I understood that counsel had recently been retained, the documents and information required to be immediately produced under the Court's orders needed to be in Gilead's hands within the next few days.

12. Defendants failed to produce any documents or information after those stipulations were submitted and so-ordered by the Court.

13. On April 2, 2025, Gilead wrote a demand letter to Defendants, emphasizing the threat to patient safety posed by the counterfeits, reiterating the Defendants' production obligations under the Seizure Order and Asset Freeze Order, and stating Gilead's intent to move for contempt if the Defendants did not produce the requisite information by Friday, April 4.

14. Defendants did not respond to Gilead's correspondence. To date, they still have not produced any documents or disclosed any asset as required by this Court's Orders.

15. I attach hereto true and correct copies of the following documents:

| Exhibit | Description |
| --- | --- |
| A | Affidavits of Service on Defendants |
| B | Asset Freeze Modification Order, dated March 27, 2025 |
| C | TRO Extension Order, dated March 27, 2025 |
| D | Demand Letter to Defendants' Counsel, dated April 2, 2025 |

3

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 5, 2025.

_____
TIMOTHY A. WATERS

4