UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GILEAD SCIENCES, INC., *et al.*,         :
                                          :
                  Plaintiffs,         :    Case No. 25-cv-1469 (RER) (RML)
                                          :
v.                                        :
                                          :
                                          :    **Filed Under Seal**
CITY PLUS CARE PHARMACY INC. D/B/A        :    **Pursuant to 15 U.S.C. § 1116(d)**
HEAL THE WORLD PHARMACY, *et al.*,        :    **And Court Order (Dkt. 15)**
                                          :
                  Defendants.         :
                                          :

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PURPORTED EMERGENCY MOTION TO MODIFY THE ASSET FREEZE**

Plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC, (together, "Gilead" or "Plaintiffs"), by and through undersigned counsel, respectfully submit this memorandum of law in opposition to Defendants' purported emergency motion to lift the Court's Asset Freeze (Dkt. 18). Defendants have filed a procedurally improper "emergency" motion days after stipulating to bringing such a motion only upon notice. They do not explain the supposed emergency, do not make a full disclosure of their assets and sources of income, and rely on old bills that predate the first voluntary release of funds that Gilead made for living and business expenses. Their "motion" (which is not really a motion) should be denied on those grounds alone.

But Defendants' motion is not merely procedurally improper and meritless: it is an outrage and an insult to this Court's authority. Defendants do not dispute that they sold counterfeit HIV medicines to patients. They do not dispute that counterfeit Gilead-branded HIV medicine was sitting in the pharmacy – including a labeled and bagged bottle awaiting patient pickup – when the Seizure Order was executed. But Defendants *still* have not produced a single pedigree, *still* have

1

not identified their counterfeit supplier(s), *still* have not made any disclosure of how much they paid for the counterfeits, and *still* have failed to even disclose how many bottles of purported Gilead-branded medicines they have dispensed in the past three months. Defendants are in open, willful contempt of this Court's orders to "immediately" disclose information about their counterfeiting of life-saving HIV medicine, and in so doing Defendants are knowingly putting innocent patients at risk – and yet Defendants insist the only emergency here is that their bank accounts are frozen. That argument is legally frivolous and morally obscene. The Court should reject it out of hand and hold the Defendants in contempt.

## ARGUMENT

### I. Defendants Remain in Contempt and Gilead's Order to Show Cause Remains Pending and Urgent

The only ripe motion before the Court is ***Plaintiffs'*** motion for an Order to Show Cause as to why Defendants should not be held in contempt for their violations of the Court's Asset Freeze and Seizure Orders (Dkts. 17-18). That motion was filed on April 7, Defendants filed their reply on April 9, and Plaintiffs filed a reply on April 11. That contempt has not been cured, and the need for the Court's intervention remains urgent and a matter of public health and safety.

Although it has been nearly a month since Defendants were ordered to provide information "immediately," Defendants have still failed to comply with the Asset Freeze and Seizure Orders. Defendants have still refused to provide ***any*** information regarding where they purchased the counterfeits – including those identified in Gilead's complaint and seized from Heal the World on March 19 – or provide a complete list of their assets.

As they previewed in their latest brief, Defendants made a small production to Gilead on April 16. It has not cured their contempt. Defendants have produced no additional information as to any source where they purchased the counterfeits (or any supposedly legitimate Gilead-branded

2

medicine); they have produced no pedigrees; and they have provided no explanation for their failure to provide that information other than to say they do not have it. Defendants did produce documents showing a handful of Gilead-branded drugs dispensed in January 2025 – despite insisting earlier that they had no such records – but continue to withhold their sales in February and March 2025. And Defendants' supplemental asset disclosure continues to omit accounts that Gilead knows that Defendants hold. Defendants remain in contempt, and Gilead's pending order to show cause should be decided at today's scheduled hearing.

## II.     Defendants Purported "Emergency Motion" Is Procedurally Improper and Barred by Defendants' Own Stipulation

By contrast, Defendants' purported motion for emergency relief is not ripe, and is in fact no motion at all. Gilead voluntarily agreed to (1) an immediate release of funds and (2) an extension of the TRO and seizure confirmation briefing schedule, memorialized in two stipulations and proposed Orders submitted on March 28, which this Court so-ordered the same day. In exchange for Gilead agreeing to immediately release funds and extend the briefing schedule, the parties agreed this type of "emergency" motion practice over the asset freeze would not continue. Specifically, the so-ordered stipulation provides: "Plaintiffs and the Defendants reserve their respective rights to further move to amend the Asset Freeze Order. **Any such motion will be made upon notice.**" Ex. A (TRO Extension Order) ¶ 3 (emphasis added).

The Defendants have not made a motion to amend the asset freeze upon notice – they have made no motion, period. Filing a brief that simply states it is both an unauthorized sur-reply and an "emergency" request to amend the asset freeze does not constitute a proper motion for relief from this Court. Under Local Civil Rule 7.1(a)(1), all motions must be accompanied by (1) a notice of motion or (2) an order to show cause. Here, Defendants have expressly limited themselves to the former option by stipulation. Defendants are represented by competent counsel

3

who are familiar with this Court's procedures, and Defendants were represented by that counsel when they agreed that any motion to amend the asset freeze "will be made upon notice." The Court should hold them to their word, find that their supposed "motion" is both procedurally improper and barred by the Court's so-ordered stipulation, and deny their request to amend the asset freeze without prejudice to file a proper motion upon notice.

### III. Defendants' "Emergency" is Unexplained

Defendants also provide no information to justify their purported emergency. The parties' March 28 stipulation provided for a modification to the Asset Freeze Order to release $32,700 in funds to Defendants so that they would be able to pay their personal and business expenses. Ex. B (Modified Asset Freeze Order). Gilead did not negotiate that number: the parties agreed in advance to be reasonable, and Gilead agreed to the full amount that Defendants proposed be immediately unfrozen. The parties entered that stipulation releasing the $32,700 at the same time they stipulated to briefing being completed on April 25, 2025, with a request for a preliminary injunction hearing in May. Ex. A at 2-3.

Defendants offer no explanation as to what has changed to create the supposedly dire emergency they claim they now face. Indeed, the only specific debts they identify predate either the original or modified Asset Freeze Orders, which were issued on March 17 and March 27. Hamza Chaudhary attaches two notices of collection for parking and camera violations, which are dated January 29 and March 5, a laboratory bill that was due on January 26, and a credit card bill for the period ending March 19, 2025. Dkt. 37 at 27. Defendants also offer no evidence of their other sources of income other than Heal the World Pharmacy that could potentially be used to pay for their bills. In short, none of the evidence provided explains how Defendants now claim that they are at risk of being unable to buy food or pay for basic living expenses.

### IV. Defendants' Motion Fails on the Merits

#### A. The Asset Freeze Should Not Be Modified

The central premise of Defendants' motion is that only $81,188.36 in funds can be restrained on the theory that this represents their profits from the scheme. Defendants are wrong, both on the facts and the law.

*1. Defendants Continue to Willfully and Contemptuously Conceal Their Counterfeit Sales*

As an initial matter, the Defendants have not fully disclosed their sales of Gilead-branded products, and so cannot move to lift the asset freeze on a purported calculation of profits. In their papers, Defendants continue to breeze over the fact that they cannot account for where they purchased for **more than half** of the BIKTARVY® that they admit to have dispensed in the past three years. *See* Ex. C (Reply in Support of Motion to Show Cause) at 6. And they continue to provide no pedigrees at all for any medicines they have purchased or dispensed, in gross violation of federal law. *See id.* at 4-5. No legitimate pharmacy would ignore these gaping holes in is recordkeeping.

But even worse, Defendants continue to play games with Gilead and the Court. As Gilead pointed out in its reply brief, Defendants insisted, even after follow-up from Gilead, that they had no records of any sales of Gilead-branded products, at all, in the year 2025. *Id.* at 7. As Gilead pointed out, that was necessarily false, because the whistleblower who alerted Gilead to Defendants' counterfeiting received counterfeit BIKTARVY® from Defendants in January 2025. *Id.* And so now Defendants have, without explanation, "located" additional dispensation records in 2025, and produced to Gilead records of the sales of additional Gilead-branded medicines, all sold in **January** 2025. That only goes to show Defendants' ongoing willful contempt of this Court's Orders. Gilead found counterfeit BIKTARVY® at the pharmacy during the March 2025 seizure, including a counterfeit bottle that was labeled, bagged, and awaiting patient pickup. *See*

5

Ex. D (Waters Decl. in Support of Motion for Order to Show Cause) ¶¶ 4-8.  Gilead has already presented evidence that Defendants were transferring large numbers of patients with prescriptions for Gilead HIV medicine to Heal the World in 2025.  And, of course, Gilead's HIV medicines, including BIKTARVY®, must be taken every day for life to be effective – these are not prescriptions that a patient fills in January and then stops taking in February.  It is utterly ridiculous for Defendants to suggest that their only 2025 sales of Gilead-branded medicines occurred in the month of January.  The record is crystal clear that Defendants sold counterfeit Gilead-branded medicines up until the day Gilead executed the Seizure Order, and that Defendants continue to willfully conceal their counterfeit sales in February and March 2025.  For Defendants to be in such open contempt of this Court's orders, and then demand that the asset freeze be lifted based on their calculation of their profits from counterfeiting, cannot be tolerated by the Court.

2. *Defendants Have Entirely Failed to Meet Their Express Burden of Proving Their Costs*

The Lanham Act expressly provides that, when calculating a Defendants' profits, Defendants have the burden of proving any and all costs they want deduced from their gross receipts.  15 U.S.C. § 1117(a)(3) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").  Here, Defendants do not even attempt to prove any element of their costs.  They have not disclosed from whom they purchased the counterfeits, and they certainly have made no disclosure – let alone produced evidence to prove – how much they paid for the fake bottles of HIV medicine that they peddled to patients.[1]  Without proof of what they paid for the counterfeits, or their cost to manufacture the counterfeits, their purported calculation of lost profits is worthless.

---

[1] Indeed, Defendants have not made an evidentiary showing of their costs for the small number of bottles they claim to have purchased from legitimate, Gilead-authorized distributors. There is

6

3. *Gilead Is Entitled to a Full Accounting of Profits for the Six-Year Claims Period*

Moreover, the Defendants' purported analysis of their counterfeiting profits rests on the faulty assumption that Gilead is entitled to only three years' worth of counterfeiting profits. In reality, the limitations period for a Lanham Act infringement action brought in New York is six years. *E.g.*, *Gross v. Bare Escentuals Beauty, Inc.*, 641 F. Supp. 2d 175, 196 (S.D.N.Y. 2008). The fact that the Seizure Order required Defendants "immediately" to provide three years' worth of information about their purchase and sale of Gilead-branded products in no way limits Gilead's claim for an accounting of profits, which goes back at least six years, to March 2019. Defendants' failure to provide any information or any documents concerning their purchases and sales of Gilead-branded products from March 2019 through February 2022 is yet another reason that their motion must be denied.

4. *Defendants Are Wrong on the Law*

The law does not support Defendants' arguments. Defendants chiefly rely on *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 CIV. 6283 (AJN), 2012 WL 5265727, (S.D.N.Y. Oct. 24, 2012) ("*Klipsch II*") in support of their assertion that only profits should be frozen. But to exempt assets from an asset freeze, "the burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Klipsch II* at *8 (internal quotation marks and citations omitted). As one Court found in refusing to amend an asset freeze issued against an alleged counterfeiter:

---

every reason to doubt that legitimacy of those supposedly "legitimate" purchases. There have been no shortages of falsified invoices supposedly from Gilead-authorized distributors in *Gilead I and II*. Defendants have not produced documents showing these purportedly legitimate purchases and sales – for example, as noted above, Defendants have produced no pedigrees at all – and so Gilead has no way to evaluate their claim.

7

> Defendant's attempt to analogize this case to *Klipsch II*, 2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012), is unpersuasive—and even undercuts their case… It turns out that [in *Kilpsch*] not only had the defendant corporation submitted an affidavit from its CEO—it also submitted a list of every sale of allegedly counterfeit product over the relevant time horizon and information about the provenance of all of the product at issue and prices paid.

*Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, No. 20-CV-3471, 2020 WL 8260381, at *3 (N.D. Ill. July 20, 2020). Here, too, Defendants' failure to produce documents and evidence regarding their counterfeits dooms their motion to amend the asset freeze.

  5. *In the Alternative, the Court Can Restrain Defendants' Accounts Under State Law*

In the alternative, the Court can restrain Defendants' accounts, in their entirety, under New York law. Gilead reserves the right to make a more fulsome showing under state law at an appropriate time and in connection with an appropriate motion, but outlines the basics below.

Under the Federal Rules of Civil Procedure, a "plaintiff in federal court may attach the assets of a defendant under the circumstances and in the manner provided by the law of the state in which the district court is located." Fed. R. Civ. P. 64; *see Pantheon Props. Inc. v. Houston*, 2022 WL 785168, at *2 (S.D.N.Y. March 14, 2022). In New York, CPLR 6201 describes the circumstances in which assets can be attached. The effect of an attachment pursuant to CPLR 6201 is the same as an asset freeze under the Court's equitable powers: the freezing of the subject assets. *Panetheon Props,* 2022 WL 785168, at *2.

As applicable here, CPLR 6201(3) provides that an order of attachment may be granted when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." *Id*. (emphasis added). "Thus, § 6201(3) requires a plaintiff to prove two elements: '1) that defendant either is

8

about to or has assigned, disposed of, encumbered, or secreted property, or removed it from the state; and 2) that defendant has acted or will act with the intent to defraud her creditors or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor.'" *Allstate Ins. Co. v. Rozenberg*, 2009 WL 9081080, No. 08-CV-565, at *5 (E.D.N.Y. Jan. 26, 2009) (quoting *Encore Credit Corp. v. LaMattina*, 2006 WL 148909, No. CV-05-5442 (CPS), at *3 (E.D.N.Y. Jan. 18, 2006)).  In order to obtain an order of attachment, the plaintiff must demonstrate that "(a) there is a cause of action; (b) it is probable the plaintiff will succeed on the merits; (c) one or more grounds for attachment provided in § 6201 exist; and (d) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." *Pantheon Props.*, 2022 WL 785168, at *2 (citing CPLR 6212(a)).

Gilead's potential judgment against Defendants is substantial.  Under the Lanham Act, Gilead may choose to pursue up to "$2,000,000 per counterfeit mark per type of goods or services sold" if "the court finds that the use of the counterfeit mark was willful."  15 U.S.C. § 1117(c).  Defendants have dispensed counterfeit bottles of BIKTARVY®, each of which bears multiple Gilead trademarks.  As Gilead argued in its motion for the asset freeze, pp. 28-29, Defendants are likely to conceal or dissipate the funds.  Defendants' subsequent conduct – refusing to comply with Court Orders to provide a full list of their assets and to provide the required information, in an apparent effort to conceal the counterfeiting scheme – only further suggests that Defendants are likely to dissipate or conceal assets to frustrate the judgment. Gilead has begun to obtain further evidence of Defendants' dissipation of assets – including regular transfers of money overseas in amounts clearly structured to be just below IRS reporting thresholds – that Gilead will present at an appropriate time if necessary.

## B. Hamza Chaudhary Should Not Be Released from the Asset Freeze

Defendants' argument that Hamza Chaudhary should be released because he is not an on-paper owner of Heal the World fare no better. As Gilead argued its initial memorandum of law, Hamza Chaudhary is liable not because he is an on-paper owner, but because he is "a moving, active, conscious force behind the defendant corporation's infringement," which renders him individually liable, on a joint-and-several liability basis. *KatiRoll Co. v. Kati Junction, Inc.,* 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014); *see Matsunoki Grp., Inc. v. Timberwork Or., Inc.*, 2009 WL 1033818, at *4 (N.D. Cal. Apr. 16, 2009) ("A plaintiff may show that a corporate employee is [a] moving, active, conscious force behind the infringing activity by demonstrating that [he or she] direct[ed], control[led], ratifie[d], or participate[d] in the infringing activity."). The limited evidence available thus far confirms Hamza's active role and participation in the counterfeiting: his statement as Heal the World's "owner" on Yelp; the reviews on Yelp identifying Hamza as the owner; the fact that Heal the World told Gilead to call "the owner" to answer questions about the counterfeit BIKTARVY®, giving Hamza's phone number and providing his Anglicized name "Harris C."; and the fact that Hamza was the only person working at the pharmacy on the day the Seizure Order was executed. A small sampling of texts recovered from Hamza's phone confirm that he was actively involved in the pharmacy's operations, including sourcing HIV medicine. Ex. E at 2 (Hamza texting a Heal the World employee that he will provide BIKTARVY®: "I got biktar. 2 total."); Ex. F at 1-2 (Heal the World employee requesting BIKTARVY® from Hamza, writing, "Biktarvy can you bring," and his reply confirming "Tomorrow. Biktarvy."); Ex. G at 5 (Heal the World pharmacist asking Hamza, "U got … Biktarvy?" and Hamza confirming he has "Biktarvy").

Moreover, bank records confirm that Hamza personally and directly profited from the sale of counterfeits. Hamza drives a Mercedes, and a document retrieved from his phone reveals that

10

the payments for his Mercedes are made directly from Heal the World's business account. Ex. H (Screenshot of Mercedes Autopayment from Heal the World's Citibank Account).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' emergency motion to modify the asset freeze.

Dated: April 18, 2025

PATTERSON BELKNAP WEBB & TYLER LLP

By: /s/ Geoffrey Potter

Geoffrey Potter
Timothy A. Waters
Anna M. Blum

1133 Avenue of the Americas
New York, NY 10036-6710
T: 212-336-2000
F: 212-336-2222
E: gpotter@pbwt.com
   twaters@pbwt.com
   ablum@pbwt.com

*Attorneys for Plaintiffs
Gilead Sciences, Inc. and Gilead Sciences Ireland UC*

**CERTIFICATION OF WORD COUNT COMPLIANCE**

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law contains 3,224 words (excluding the caption and signature block), and that I have relied upon Microsoft Word's word count for purposes of this certification.

_____
Geoffrey Potter

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, I served Plaintiffs' Opposition to Defendants' Purported Emergency Motion to Modify the Asset Freeze, and the exhibits thereto, upon the following:

>Patrick Tobia
>Mark Moon
>Satish V. Poondi
>Trenk Isabel Siddqi & Shahdanian P.C.
>290 W. Mt. Pleasant Ave, Suite 2370
>Livingston, NJ 07039
>ptobia@tisslaw.com
>mmoon@tisslaw.com
>spoondi@trenkisabel.com
>
>*Counsel for Defendants City Plus Care Pharmacy Inc. d/b/a Heal the World Pharmacy, Nabila Chaudhary, Qaiser Chaudhary, and Hamza Chaudhary*

_____
Anna M. Blum