## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

GILEAD SCIENCES, INC., *et. al.*,  :
                                   :
                    Plaintiffs,    :    Case No. 25-cv-1469 (RER) (RML)
                                   :
v.                                 :
                                   :
CITY CARE PLUS PHARMACY LLC D/B/A  :
HEAL THE WORLD PHARMACY; NABILA    :
CHAUDHARY; QAISER CHAUDHARY; and   :
HAMZA CHAUDHARY                    :
                                   :
                                   :
                    Defendants.    :
--------------------------------------------------------------

## DECLARATION OF NABILA CHAUDHARY

Nabila Chaudhary, of full age, pursuant to 28 U.S.C. § 1746, hereby certifies and declares as follows:

1. I signed an Asset Sale Agreement for the purchase of City Care Plus Pharmacy d/b/a Heal the World Pharmacy (the "Pharmacy") on or around January 23, 2019. I also executed the bill of sale for the Pharmacy on March 11, 2019. Attached hereto as **Exhibit A** is a true and accurate copy of the Bill of Sale dated March 11, 2019 referencing the Asset Sale Agreement.

2. I was the sole owner of the Pharmacy from March 11, 2019 through January 21, 2022 as confirmed by the Pharmacy's filed K-1s. Attached hereto as **Exhibit B** is a true and accurate copy of the Schedule K-1s for the Pharmacy for 2019, 2020, and 2021.

3. On December 20, 2021, I, as the President and sole shareholder of the Pharmacy executed an Asset Purchase Agreement on behalf of the Pharmacy. Attached hereto as **Exhibit C** is a true and accurate copy of the Asset Purchase Agreement dated December 20, 2021.

4. On January 24, 2022, I executed a bill of sale transferring ownership of 200 shares of the Pharmacy to Shumaila Arslan. Attached hereto as **Exhibit D** is a true and accurate copy of

the Bill of Sale dated January 24, 2022. Attached hereto as **Exhibit E** is a true and accurate copy of the Department of State website for the Pharmacy showing 200 shares issued for the Pharmacy corporation.

5. I received a check from Shumaila Arslan in the amount of the initial downpayment of $100,000 on January 24, 2022. Attached hereto as **Exhibit F** a true and accurate copy of the check dated January 24, 2022 for $100,000 from Shumaila Arslan. Attached hereto as **Exhibit G** is a true and accurate copy of the NPI search for the Pharmacy listing Shumaila Arslan as the owner of the Pharmacy.

6. Shumaila paid the remainder of the purchase price via subsequent checks that were deposited in a TD Bank account in 2022 and 2023. That account has been frozen.

7. Since the sale of the Pharmacy, I do not hold any ownership interest in the Pharmacy nor do I have any control or possession of the Pharmacy's records.

The information set forth in this affidavit is based on my knowledge and a review of the documents attached. The lawyers typed the affidavit based on the information that I provided to them.

I declare under penalty of perjury that the foregoing is true and correct.

Nabila Chaudhary

Dated: April 30, 2025

# EXHIBIT A

*sn*

*Bill of Sale of Business with Affidavit of Title*

# Know Everyone by these Presents,

THAT **HEAL THE WORLD PHARMACY, INC,** whose address is 161-45 Baisley Blvd., South Jamaica, New York 11434 (herein the "Transferor"), for and in consideration of the sum of TEN and 00/100 ($10.00) DOLLARS, and other good and valuable consideration, the receipt of which is hereby acknowledged, paid to the Transferor, at or before the ensealing and delivery of these presents by

**CITY PLUS CARE PHARMACY, INC.** whose address is 161-45 Baisley Blvd., South Jamaica, New York 11434(herein the "Transferee"), sells, transfers, sets over and assigns to the said Transferee, the following described business: **the retail pharmacy** located at 161-45 Baisley Blvd., South Jamaica, New York 11434, including the prescription records and patient files, general merchandise and prescription inventory, trade fixtures and equipment, leasehold improvements and the good will of the business, telephone numbers, website(s) and e-mail address(es), if any, of the business, more particularly described in the Asset Sale Agreement dated January 23, 2019, as amended, between Transferor and Transferee.

**TO HAVE AND TO HOLD** the same unto the Transferee forever, subject to no liens, claims or encumbrances.

**AND** the Transferor covenants and agrees, to and with the Transferee to warrant and defend the sale of said business and business assets hereby sold, unto the Transferee against all and every person and persons whomsoever.

The warranties and representations of Transferor contained in paragraph 4 of the Asset Sale Agreement heretofore entered into between the Transferor and Transferee dated January 23, 2019, shall survive the delivery of this Bill of Sale.

The terms, covenants and agreements herein contained shall bind and inure to the benefit of the respective parties hereto, and their respective legal representatives, successors and assigns.

The gender and number used in this instrument are used as a reference term only and shall apply with the same effect whether the parties are of the masculine or feminine gender, corporate or other form, and the singular shall likewise include the plural.

This Bill of Sale may be executed in separate counterparts and by facsimile or e-mail and shall collectively be considered a single, original, enforceable instrument.

**IN WITNESS WHEREOF**, the Transfer has signed and sealed these presents this 11th day of March, 2019.

**TRANSFEROR:**

HEAL THE WORLD PHARMACY, INC.

*Signed, Sealed and Delivered* )
*in the Presence of* )

By: _____
ISAAK PINKHASOV, President

**TRANSFEREE:**

CITY PLUS CARE PHARMACY, INC.

By: Nanila Chuche
NABILA CHAUDHARY, President

2

# EXHIBIT B

671119

☐ Final K-1          ☐ Amended K-1          OMB No. 1545-0123

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2019**

For calendar year 2019, or tax year

beginning _____  ending _____

## Shareholder's Share of Income, Deductions, Credits, etc.     ► See back of form and separate instructions.

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
83-3261391

**B** Corporation's name, address, city, state, and ZIP code

CITY PLUS CARE PHARMACY INC

161-45 BAISLEY AVE
JAMAICA NY 11434-

**C** IRS Center where corporation filed return
CINCINNATI

| Part II | Information About the Shareholder |
|---|---|

**D** Shareholder's identifying number
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

**E** Shareholder's name, address, city, state, and ZIP code

NABILA CHAUDHARY

3449 21ST ST
ASTORIA NY 11106-

**F** Shareholder's percentage of stock
ownership for tax year. . . . . . . .      100.000

For IRS Use Only

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| # | Item | # | Item |
|---|---|---|---|
| 1 | Ordinary business income (loss)  9,837 | 13 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| 12 | Other deductions | | |
| | | 17 | Other information  V |
| 18 | More than one activity for at-risk purposes* | | |
| 19 | More than one activity for passive activity purposes* | | |

* See attached statement for additional information.

**For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.**     www.irs.gov/Form1120S     **Schedule K-1 (Form 1120-S) 2019**
BCA

671120

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2020**

For calendar year 2020, or tax year

beginning _____    ending _____

**Shareholder's Share of Income, Deductions,**
**Credits, etc.**    ▶ See separate instructions.

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 74,066 | 13 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis C 557 |
| 12 | Other deductions | | |
| | | 17 | Other information V |

| Part I | Information About the Corporation |
|---|---|

**A** Corporation's employer identification number
83-3261391

**B** Corporation's name, address, city, state, and ZIP code

CITY PLUS CARE PHARMACY INC

161-45 BAISLEY AVE
JAMAICA NY 11434

**C** IRS Center where corporation filed return
CINCINNATI

| Part II | Information About the Shareholder |
|---|---|

**D** Shareholder's identifying number
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

**E** Shareholder's name, address, city, state, and ZIP code

NABILA CHAUDHARY

3449 21ST ST
ASTORIA NY 11106

**F** Current year allocation percentage . . . . .    100.000 %

**G** Shareholder's number of shares
Beginning of tax year . . . . . . . . .    100
End of tax year . . . . . . . .    100

**H** Loans from shareholder
Beginning of tax year . . . . . . . . $ _____
End of tax year . . . . . . . . . . $ _____

For IRS Use Only

| | | |
|---|---|---|
| 18 | ☐ | More than one activity for at-risk purposes* |
| 19 | ☐ | More than one activity for passive activity purposes* |

\* See attached statement for additional information.

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.    www.irs.gov/Form1120S    Schedule K-1 (Form 1120-S) 2020
BCA

671121

| | |
|---|---|
| ☐ Final K-1 | ☐ Amended K-1 |

OMB No. 1545-0123

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2021**

For calendar year 2021, or tax year

beginning _____  ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.**

▶ See separate instructions.

| **Part III** | **Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| # | | # | |
|---|---|---|---|
| 1 | Ordinary business income (loss)  178,296 | 13 | Credits |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Schedule K-3 is attached if checked . . . . . . ▶ ☐ |
| 6 | Royalties | 15 | Alternative minimum tax (AMT) items |
| 7 | Net short-term capital gain (loss) | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain | | |
| 9 | Net section 1231 gain (loss) | 16 | Items affecting shareholder basis |
| 10 | Other income (loss) | | |
| | | 17 | Other information |
| | | V | |
| 11 | Section 179 deduction | | |
| 12 | Other deductions | | |

**Part I**     **Information About the Corporation**

**A**   Corporation's employer identification number
83-3261391

**B**   Corporation's name, address, city, state, and ZIP code

CITY PLUS CARE PHARMACY INC

161-45 BAISLEY AVE
JAMAICA NY 11434

**C**   IRS Center where corporation filed return
CINCINNATI

**D**   Corporation's total number of shares
    Beginning of tax year . . . . . . . . .  200
    End of tax year . . . . . . . . . .  200

**Part II**     **Information About the Shareholder**

**E**   Shareholder's identifying number
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

**F**   Shareholder's name, address, city, state, and ZIP code

NABILA CHAUDHARY

3449 21ST ST
ASTORIA NY 11106

**G**   Current year allocation percentage . . . . .  100.000 %

**H**   Shareholder's number of shares
    Beginning of tax year . . . . . . . . .  200
    End of tax year . . . . . . . . .  200

**I**   Loans from shareholder
    Beginning of tax year . . . . . . . . $ _____
    End of tax year . . . . . . . . . . $ _____

For IRS Use Only

| 18 | ☐ More than one activity for at-risk purposes* |
|---|---|
| 19 | ☐ More than one activity for passive activity purposes* |

\* See attached statement for additional information.

For Paperwork Reduction Act Notice, see the Instructions for Form 1120-S.
BCA

www.irs.gov/Form1120S

**Schedule K-1 (Form 1120-S) 2021**

# EXHIBIT C

## ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT (this "Agreement") made December 20, 2021 (the "Execution Date"), by and among, NABILA CHAUDHARY residing at 21 Harding Avenue, Roslyn Heights, NY 11577 (hereinafter "Chaudhary" and sometimes referred to herein as "Sellers") and SHUMAILA ARSLAN residing at 38 East Oakdale Street, Bay Shore, NY 11706 (hereinafter "De Toribio" and sometimes referred to herein as "Purchaser").

## WITNESSETH:

WHEREAS, Seller is an ongoing Pharmaceutical practice (the "Practice"),

WHEREAS, Seller is the shareholder of CITY PLUS CARE PHARMACY INC. (D/B/A HEAL THE WORLD PHARMACY), a New York State Corporation with offices located at 161-45 Baisley Boulevard, Jamaica, NY 11434 (hereinafter "Corporation"),

WHEREAS, Seller owns 200 NPV shares of Corporation and shall transfer the same to Purchaser, and

WHEREAS, Purchaser desires to acquire, and Seller desires to sell, substantially all of the assets of Seller used in connection with the Pharmacy (NY State License # 031579) located at 161-45 Baisley Boulevard, Jamaica NY 11434 (the "Premises"), hereinafter specified as the "Business", upon the terms and conditions hereinafter set forth, and

NOW, THEREFORE, in consideration of the covenants and agreements hereafter set forth, and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1. **Agreement to Sell**.

   (a)      Sellers agree to sell, transfer and deliver to Purchaser, and Purchaser agrees to purchase, upon the terms and conditions hereinafter set forth, the following assets of the Business:

      (i) all of the equipment, instruments, apparatus, medical and office furniture, fixtures, medical supplies, pharmaceutical inventory and other fixed and movable tangible assets related to the Business, as set forth on Schedule 1(a)(i) hereof ("Tangible Assets");

      (ii) any registered or unregistered copyright or trade name, registered, unregistered or common law trademark or service mark, websites or domain names, or other item of intellectual property with respect to which Sellers have any ownership or leasehold interest ("Intellectual Property") with respect to the Business; and

      (iii) all computer programs, books and financial records, telephone and fax numbers, Intellectual Property, and other intangibles relating to the Business ("Intangible Assets," and together with the Tangible Assets, the "Assets").

(b)    The Assets shall be conveyed pursuant to a Bill of Sale in form and substance reasonably satisfactory to Purchaser and Purchaser's counsel, in substantially the form attached hereto as Exhibit A.

(c)    The sale hereunder shall not include, and Sellers shall retain, all cash, securities, cash equivalents and accounts receivable of the Business on hand at and prior to the Closing Date (as herein defined), as well as those assets set forth on Schedule 1(c) hereof (the "Excluded Assets").

2.  **Purchase Price.**

(a)    The purchase price to be paid by Purchaser for the Assets is THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000.00) (the "Purchase Price"), payable in certified check, bank check, or by wire transfer at the Closing (as herein defined).

(b)    The Purchase Price of THREE HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) is comprised of the following:

Tangible Assets: $ 0.0
Intangible Assets: $350,000.00**

(c)    The seller shall pay the $80,000 at time of contract and the remaining balance of $270,000 in equal payment over 36 months starting on the 1st of the month after closing.

**\*\*THE PURCHASE PRICE DOES NOT INCLUDE CURRENT INVENTORY.**

The parties agree to use the foregoing allocation, which was the result of arm's length negotiations, for purposes of all Federal, State and local tax returns.

3.  **Acceptable Funds**.  All money payable under this Agreement, unless otherwise specified, shall be paid either: (a) in cash, but not more than $1,000 shall be paid in cash; (b) by good certified check of Purchaser, or official check of any bank, savings bank, trust company, or savings and loan association which is a member of the New York Clearing House, payable to the direct order of Seller; (c) by wire transfer; or (d) as otherwise agreed to in writing by the parties or their attorneys.

4.  **The Closing**.  The "Closing" means the settlement of the obligations of Sellers and Purchaser to each other under this Agreement, including the payment of the Purchase Price to Seller as provided in Section 2 hereof and the delivery of the closing documents provided for in Section 5 hereof.  The Closing shall be held at the offices of Seller, at 10 A.M. on or about March 28, 2020 (the "Closing Date"), or at such other time and place as the parties hereto shall mutually agree. The Closing may be accomplished electronically.

5.  **Closing Deliverables**.

(a)    **Sellers' Closing Deliverables**. At the Closing, Sellers shall deliver the following:

(i) A duly executed counterpart by Seller of the Bill of Sale substantially in the form annexed hereto as Exhibit A;

(ii) A duly executed counterpart by Sellers of the Medical Records Custodial Agreement substantially in the Form annexed hereto as Exhibit B and custody of patient records, including prescription files, [physical and EMR (electronic medical records)] unless otherwise directed by patient, as provided for in the Medical Records Custodial Agreement;

(iii) An executed Bring-Down Certificate in substantially the form attached hereto as Exhibit C;

(iv) An executed Officer's Certificate in substantially the form attached hereto as Exhibit D;

(v) Such other instruments as may be necessary or proper to transfer to Purchaser all other ownership interests in the Assets to be transferred under this Agreement.

(b)    **Purchaser's Closing Deliverables.** At the Closing Purchaser shall deliver the following:

(i) A duly executed counterpart by Purchaser of the Bill of Sale substantially in the form annexed hereto as Exhibit A;

(ii) A duly executed counterpart by Purchaser of the Medical Records Custodial Agreement substantially in the Form annexed hereto as Exhibit B.

6. **Transfer Taxes.** Purchaser shall be responsible for any sales or use taxes payable in connection with the sale and purchase of the Assets, and shall remit such taxes to the appropriate taxing authority by filing Form ST-130, or any other tax forms required for any sales or use taxes payable. Each party hereby waives compliance with the provisions of any applicable "bulk sales," "bulk transfer" or similar laws of any governmental authority in connection with the consummation of the transactions contemplated herein, including, without limitation, the bulk sale provisions of the New York State Sales and Use Tax. Sellers shall jointly and severally indemnify Purchaser and its officers, managers, members, employees, and agents in respect of, and hold each of them harmless from and against, any and all losses suffered, occurred or sustained by any of them or to which any of them may be subject, resulting from, arising out of, or relating to the failure of Purchaser and Seller to comply with the terms of any Bulk Sales Laws.

7. **Use of Purchase Price to Pay Encumbrances.** If there is any lien or encumbrance against the Assets, or anything else affecting this sale, which Seller is obligated to pay and discharge at the Closing, Seller may use any portion of the balance of the Purchase Price to discharge it, or Seller may allow to Purchaser the amount thereof as a credit at the Closing. Purchaser agrees to provide separate certified checks as reasonably requested to assist in clearing up these matters.

8. **Representations and Warranties of Sellers.** Sellers jointly and severally represent and warrant to Purchaser as follows:

(a)    Seller is a New York State Corporations duly organized and validly existing under the laws of the State of New York, is in good standing, and is duly qualified to do business in in the State of New York. Seller has full power and authority to conduct its business as now carried on, and to carry out and perform its undertakings and obligations as provided herein. The execution and delivery by Seller of this Agreement and the consummation of the transactions contemplated herein have been duly authorized by , the sole officer] of Seller and will not conflict with or breach any provision of the of Seller.

(b)    No action, approval, notification, consent or authorization of any governmental authority is necessary for Seller to consummate the transactions contemplated hereby except as set forth on Schedule 8(b). Notwithstanding the foregoing, subsequent to the execution of this Agreement, Seller will, to the extent required by law provide written notice of the sale contemplated of herein to: patients, the New York State Department of Education, the Drug Enforcement Administration and any other applicable State or Federal agency.

(c)    Seller is the owner of and has good and marketable title to the Assets, free of all liens, claims and encumbrances, except as may be set forth herein.

(d)    There are no violations of any law or governmental rule or regulation pending against Seller or the Assets.

(e)    Seller has contacted the New York State Department of Health Bureau of Narcotic Enforcement and has corrected any and all reporting errors.

(f)    There are no judgments, liens, suits, actions or proceedings pending against Seller or the Assets, including, without limitation, payor audits or any investigations or audits by Medicare or Medicaid.

(g)    None of the Assets are subject to any agreement affecting the transfer of said Asset free and clear from any and all judgements, liens, suits, actions, and the transfer of the Assets will not result in a breach or constitute a default (or an event which, with notice or lapse of time or both would constitute a default) under any agreement, instrument, or understanding.

(h)    At the time of the Closing, there will be no creditors of any of the Assets or the Business.

9.    **Representations and Warranties of Purchaser**. Purchaser represents and warrants to Seller as follows:

(a)    Purchaser has full power and authority to carry out and perform its undertakings and obligations as provided herein and that the principals of Purchaser are held to the same standards of confidentiality as Seller's principal and are lawfully permitted to act as custodian of the Seller's patient records, including prescription files.

(b)    Purchaser acknowledges and agrees that it is purchasing all Assets "as is" and "with all faults" based upon the condition of such property as of the date of this Agreement.

(c)    No action, approval, consent or authorization of any governmental authority is necessary for Purchaser to consummate the transactions contemplated hereby.

(d)    There are no judgments, liens, suits, actions or proceedings pending or, to the best of Purchaser's knowledge, threatened against Purchaser or its property that would prevent Purchaser from fulfilling its obligations pursuant to this Agreement.

10. **No Other Representations**.    Purchaser acknowledges that neither Sellers, nor any representative or agent of Sellers, has made any representation or warranty (expressed or implied) regarding the Assets, or any matter or thing affecting or relating to this Agreement, except as specifically set forth in this Agreement.  Sellers shall not be liable or bound in any manner by any oral or written statement, representation, warranty, agreement or information pertaining to the Assets or this Agreement furnished by any broker, agent or other person, unless specifically set forth in this Agreement, the Medical Records Custodian Agreement, the Bill of Sale, and such other documents furnished pursuant to or in furtherance of this Agreement.  Purchaser has inspected the Assets and Purchaser agrees to take the Assets "as is" and in their present condition, subject to reasonable use, wear, tear and deterioration between the Execution Date and the Closing Date (the "Executory Period"). Notwithstanding the foregoing, should the condition of any of the Assets change during the Executory Period beyond mere wear and tear, Sellers shall notify Purchaser within ten (10) days, and in no event less than five (5) days prior to the Closing Date, of such change along with the cost to replace or repair such Asset.  Upon such notice, Purchaser may elect to (i) have the Purchase Price reduced by the cost of repair or replacement, or (ii) have Sellers repair or replace such Asset at Sellers' sole cost.

11. **Conduct of the Business**. During the Executory Period, Seller and Ms. Chaudhary shall:

(a)    Conduct the Business in the Ordinary Course of Business (the "Ordinary Course of Business" means the ordinary course of business consistent with Seller's past custom and practice for the Business, taking into account the facts and circumstances in existence from time to time, except that Seller shall not be required to make (or cause to be made) any capital improvements or replacements to the properties other than (i) as expressly provided herein, (ii) standard maintenance and other work needed to keep the properties in good order and repair, and (iii) such work as is necessary to prevent threat of harm to persons or property (each of which shall be at Seller's cost));

(b)    Notify Purchaser of any pending litigation;

(c)    Not sell, transfer, assign, encumber or change the status of title of all or any portion of the Assets;

(d)    Use its best efforts to preserve the Business and the goodwill of the patients and suppliers of the Business and others having relations with Sellers; and

(e)    Give Purchaser and its duly designated representatives reasonable access to Seller's premises and the books and records of the Business, and furnish to Purchaser such data and information pertaining to Seller's Business as Purchaser from time to time may reasonably request, subject, however, to the Purchaser's representations set forth in Section 9(a) hereinabove. Unless and until the Closing shall take place, Purchaser shall hold in confidence all information

obtained in connection with this Agreement, and, if for any reason the Closing shall not take place, Purchaser shall return to Seller all documents received hereunder.

12. **Income and Expenses Before and After the Closing.** Except as otherwise provided in this Agreement, Sellers shall be jointly and severally liable for the payment of all bills for merchandise, goods and inventory delivered to the Business on and before the Closing Date; and Purchaser shall be liable for the payment of all bills for merchandise, goods and inventory delivered to the Business after the Closing Date. All money received by Purchaser after the Closing, on account of Seller's accounts receivable and other receivables, in each case in connection with Seller's operation of the Business prior to the Closing, shall belong to Seller, and shall be collected by Purchaser and promptly remitted to Seller within thirty (30) days of receipt. Seller shall be liable for the payment of all salaries, payroll deductions and taxes levied upon the Business in connection with the Business's work performed before the Closing. Purchaser shall be responsible for the payment of all salaries, payroll deductions and taxes levied upon the Business in connection with the operation of the Business after the Closing.

13. **Conditions to Closing.** The obligations of the parties to close hereunder are subject to the following conditions:

(a)     All of the terms, covenants and conditions to be complied with or performed by the other parties under this Agreement on or before the Closing shall have been complied with or performed in all material respects, including, without limitation, the delivery and execution of the documents set forth in Section 5.

(b)     All representations or warranties of the other parties herein are true in all material respects as of the Closing Date.

(c)     Seller shall have filed and/or received all necessary government authorizations and notices required by State or Federal law, which shall be obtained in the time constraints required by applicable law, rule or regulation and provide Purchaser with copies of all such authorizations and notices, including, without limitation:

(i) a letter to the Drug Enforcement Administration Special Agent in Charge setting forth the proposed transaction no less than fourteen (14) days prior to the Closing Date;

(ii) a Discontinuance Form filed with the New York State Education Department Office of the Professions New York State Board of Pharmacy; and

(iii) a notice to the New York State Department of Health, Bureau of Narcotic Enforcement of the transactions contemplated herein no less than thirty (30) days prior to the Closing Date.

(d)     On the Closing Date, there shall be no liens or encumbrances against the Assets, except as may be provided for herein.

14.  Non-Competition; Non-Solicitation.

(a)    In consideration of the promises contained herein and the consideration to be received by Sellers pursuant to this Agreement, the receipt and sufficiency of which are hereby acknowledged:

(i) Sellers, jointly and severally, covenant and agree that for a period of five (5) year following the later of (a) the Closing Date and (b) the termination of Ms. Chaudhary's consulting with Purchaser pursuant to the neither the Seller nor Ms. Chaudhary shall, directly or indirectly, without the prior written consent of the Purchaser or its principal NABILA CHAUDHARY, whether on their own account or as a partner, member, shareholder, employee, independent contractor, or in any other capacity, open or operate a pharmaceutical practice within Nassau County or Suffolk County; and

(ii) Sellers further, jointly and severally, covenant and agree that for a period of five (5) year following the later of (a) the Closing Date and (b) the termination of Ms. Chaudhary's consulting with Purchaser pursuant to the neither of them shall (nor shall they allow any entity in which either of them holds a controlling interest):

(a) induce or solicit any patient of Purchaser to patronize any competing practice or professional for pharmaceutical services, advise any patient of Purchaser to withdraw, curtail or cancel such patient's business with Purchaser, or disclose to any other person, partnership, firm, corporation, practice or other entity the names or addresses of any patients of Purchaser; and

(b) solicit, induce or engage any employee of Purchaser to leave Purchaser's employ.

(b)    The Sellers, jointly and severally, acknowledge and agree that:

(i) the terms contained in this Section 14 are necessary for the reasonable and proper protection of Purchaser's interest;

(ii) each and every covenant and restriction contained in this Section 14 is reasonable in respect of such matter, length of time and geographical area; and

(iii) Purchaser has been induced to enter this Agreement with Sellers in part due to Sellers' representations that they will abide and be bound by each of the aforesaid covenants and restraints.

(c)    If any court or tribunal of competent jurisdiction determines that the duration, geographical limit or any other aspect of the above non-competition covenants is unenforceable in accordance with its terms in a particular jurisdiction, such covenant shall not terminate; instead, such covenant shall be deemed amended to the extent required to render it valid and enforceable in such jurisdiction and such court or tribunal is hereby authorized and directed to amend the non-

competition covenant only to the extent that such court or tribunal determines such an amendment is necessary to make it valid and enforceable in said jurisdiction.

(d)    Seller and Ms. Chaudhary agree that damages at law would be an insufficient remedy for Purchaser in the event the Seller and/or Ms. Chaudhary violate any provision of this Section 14, and that Purchaser shall be entitled to, among other remedies, make an application to a court of competent jurisdiction to obtain injunctive relief of any such action by Seller and/or Ms. Chaudhary.

15.  **Indemnification.**  Sellers hereby agree, jointly and severally, to indemnify, defend and hold harmless Purchaser and all trustees, officers, members, assigns, employees, and agents thereof (collectively, the "Purchaser Indemnitees" and individually a "Purchaser Indemnitee") against and with respect to:

(a)    any and all losses, injuries, damages, deficiencies, liabilities, demands, claims, actions, suits, proceedings, assessments, judgments, costs and reasonable legal and other expenses and obligations (collectively, "Losses") resulting or arising from the failure of Sellers to pay or perform on a timely basis any agreement or obligations entered into by Sellers prior to the Closing, provided such agreement or obligation has not been assigned by Seller and assumed by Purchaser;

(b)    any and all Losses resulting or arising from Sellers' occupancy of the Premises on or prior to the Closing, or Sellers' ownership of the Assets prior to the Closing, or the operation of the Business prior to the Closing, except (i) to the extent expressly assumed by Purchaser herein or (ii) to the extent any Seller Indemnitee (defined below) would be entitled to indemnification from Purchaser for such Losses pursuant to Section 16, below, had such Seller Indemnitee incurred such Losses;

(c)    without limiting the generality of the foregoing, any and all Losses resulting or arising from (i) any claim, action, suit, proceeding or investigations including claims for medical malpractice, relation to acts or omissions of Sellers, (ii) claims by employees, former employees, agents or representatives of Seller with respect to their employment or engagement by Seller prior to the Closing or the termination thereof by Seller, whether at, prior to or after the Closing (including any such termination that occurs immediately before the hiring of any such person by Purchaser), (iii) claims for contributions, benefits, withdrawal liability or other amounts by or with respect to any employee benefit plan as defined in Section 3(3) of the Employment Retirement Income Security Act of 1974, as amended from time to time ("ERISA") maintained or contributed to by Seller or any entity affiliated with Seller for purposes of the Code or ERISA, (iv) any presence, release or emission of hazardous substances on, in or from the Premises prior to the Closing or any noncompliance by Seller with any environmental laws prior to the Closing, or (v) the failure of Seller to pay when due any of its liabilities or obligations for taxes;

(d)    any and all Losses resulting or arising from any material misrepresentation or breach of warranty on the part of Seller under this Agreement or any certificate given pursuant hereto; and

(e)    any and all Losses resulting or arising from any non-fulfillment of any covenant or agreement on the part of Seller or Ms. Chaudhary under this Agreement, including, without

limitation the requirement to obtain and/or provide all necessary authorizations and notices to government officials and agencies regarding this transaction.

16. **Purchaser's Indemnification Obligation to Seller**. Purchaser hereby agrees to indemnify, defend and hold harmless Seller, all owners, directors, officers, employees and agents thereof, and Ms. Chaudhary (collectively, the "Seller Indemnitees" and individually, a "Seller Indemnitee") against and with respect to:

      (a)    any and all Losses resulting or arising from the failure of Purchaser to pay or perform on a timely basis any agreement or obligations entered into or assumed by Purchaser pursuant to this Agreement and following the Closing;

      (b)    any and all Losses resulting or arising from the use or ownership of the Assets after the Closing;

      (c)    any and all Losses resulting or arising from any material misrepresentation or breach of warranty on the part of Purchaser under this Agreement or any certificate given pursuant hereto; and

      (d)    any and all Losses resulting or arising from any non-fulfillment of any covenant or agreement on the part of Purchaser under this Agreement.

17. **Third Party Claims**. If a third party claim is made against a Seller Indemnitee or a Purchaser Indemnitee (the "Indemnitee") and if such Indemnitee reasonably believes that such claim could give rise to a right of indemnification under Sections 15 or 16 against Purchaser or Seller as the case may be (the "Indemnitors"), then such Indemnitee shall give written notice to the Indemnitors of such claim as soon as reasonably practicable after such Indemnitee has received notice thereof (provided that failure to give timely notice shall not limit the indemnification obligations of the Indemnitors hereunder except to the extent that the delay in giving, or failure to give, such notice has a material adverse effect upon the ability of the Indemnitors to defend against the claim). Such Indemnitee shall give the Indemnitors an opportunity to defend such claim, at the Indemnitors' expense with counsel selected by the Indemnitors and reasonably satisfactory to such Indemnitee, provided that such Indemnitee shall at all times have the right to fully participate in the defense at its own expense (and may retain its own counsel at the expense of the Indemnitors if counsel selected by the Indemnitors shall conclude that representation of such Indemnitee and the Indemnitors by the same counsel would present a conflict). Failure of the Indemnitors to give an Indemnitee written notice of their election to defend such claim within ten (10) days after notice thereof shall have been given by such Indemnitee to the Indemnitors shall be deemed a waiver by the Indemnitors of their right to defend such claim. If the Indemnitors shall elect not to assume the defense of such claim (or if the Indemnitors shall be deemed to have waived their right to defend such claim) or shall not diligently pursue such defense, such Indemnitee shall have the right, but not the obligation, to undertake the defense of, and to compromise or settle (exercising reasonable business judgment), the claim on behalf, for the account, and at the risk and expense (including the payment of the reasonable attorneys' fees of such Indemnitee regardless of whether the Indemnitee prevails against the third party claim), of the Indemnitors. If the Indemnitors elect to assume the defense of any such third party claim, the Indemnitors shall conclusively be deemed to have acknowledged their obligation under this Section 17 to indemnify the Indemnitee in

accordance with the terms hereof in respect of such claim and shall be obligated to take all steps necessary in the diligent defense or settlement of such claim. None of the Indemnitors shall consent to the entry of any judgment or settle or compromise any third party claim for which an Indemnitee has sought indemnification from the Indemnitors without the approval of such Indemnitee. No Indemnitee shall unreasonably withhold or delay its approval of any such proposed consent, settlement or compromise, provided that an Indemnitee shall not be deemed to have unreasonably withheld or delayed any such approval if the proposed consent, settlement or compromise does not include as an unconditional term thereof the giving by the claimant to such Indemnitee of a release from all liability in respect of such claim except the liability satisfied by the Indemnitors.

18.  **Brokerage**.  The parties hereto represent and warrant to each other that they have not dealt with any broker or finder in connection with this Agreement or the transactions contemplated hereby, and no other broker or any other person is entitled to receive any brokerage commission, finder's fee or similar compensation in connection with this Agreement or the transactions contemplated hereby. Each of the parties shall indemnify and hold the other parties harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, pertaining to any broker, finder or other person with whom such party has dealt.

19.  **Assignment**.  None of the parties hereto shall assign this Agreement, in whole or in part, without the prior written authorization and consent of the other.

20.  **Notices**.  All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand or by any nationally recognized overnight courier or by registered or certified mail, return receipt requested, with postage prepaid, to Seller or Purchaser, as the case may be, at their addresses first above written, or at such other addresses as they may designate by notice given hereunder. Notices shall be deemed given upon personal delivery, three (3) days following deposit in the mail for registered or certified mail, and three (3) days after deposit with a nationally recognized overnight courier. Copies of all such notices, demands and other communications simultaneously shall be given in the aforesaid manner to Seller's attorneys, NONE.

21.  **Transition**.

   (a)    **Post-Closing Efforts**.

           (i) Seller shall file a New York State Board of Pharmacy Discontinuance form within fifteen (15) business days following the Closing Date, and shall provide Purchaser with a copy of the application and any response(s) from the New York State Board of Pharmacy.

           (ii) Seller and Ms. Chaudhary agree that they shall each execute such letters and other correspondence deemed reasonably necessary by Purchaser and Ms. Scheinson to notify Seller's and Ms. Chaudhary's patients of the fact that Purchaser has obtained custody of their medical records and containing information concerning the Purchaser's pharmaceutical practice.

(b)    **Custody of Records**.  Purchaser may transport all patient records, including prescription files, to which it receives custody hereunder to locations determined by Purchaser. Purchaser's custody of any patient medical records, including prescription files, shall be subject to all required confidentiality protections; provided, however, that Seller and Ms. Chaudhary shall be entitled, upon reasonable notice to Purchaser, to receive access to such records (and copies thereof at Seller's and/or Ms. Chaudhary's cost) and all business and financial records transferred to Purchaser pursuant to this Agreement (and copies thereof at Seller's and/or Ms. Chaudhary's cost) to the extent necessary to: (i) defend a legal action or regulatory investigation, (ii) submit or justify a claim to a third-party payor, (iii) prepare tax returns or (iv) as otherwise required by law or medical ethical standards.  Purchaser's obligation to retain such records shall not exceed the requirements of applicable law.

22.  **Survival**. Unless otherwise expressly set forth in this Agreement, all of the representations, warranties, covenants, or other obligations of Seller and Ms. Chaudhary hereunder shall survive the Closing through and until the expiration of any applicable statute of limitations.

23.  **Entire Agreement**.  This Agreement contains all of the terms agreed upon between Seller and Purchaser with respect to the subject matter hereof.  This Agreement has been entered into after full investigation.  All prior oral or written statements, representations, promises, understandings and agreements, pertaining to the subject matter hereof, of Seller and Purchaser are merged into and superseded by this Agreement, which alone fully and completely expresses their Agreement.

24.  **Changes Must Be In Writing**.  No delay or omission by either Seller or Purchaser in exercising any right shall operate as a waiver of such right or any other right.  This Agreement may not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by the party to be bound. No waiver by any party of any breach hereunder shall be deemed a waiver of any other or subsequent breach.

25.  **Captions And Exhibits**.  The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement. The Exhibits and Schedules annexed to this Agreement are integral parts of this Agreement, and where there is any reference to this Agreement it shall be deemed to include said Exhibits and Schedules.

26.  **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its conflict of Laws principles. If any provisions of this Agreement shall be unenforceable or invalid, such unenforceability or invalidity shall not affect the remaining provisions of this Agreement.

27. **Submission to Jurisdiction**. ANY AND ALL SUITS, LEGAL ACTIONS OR PROCEEDINGS ARISING OUT OF THIS AGREEMENT SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT SITTING IN THE STATE OF NEW YORK AND LOCATED IN THE COUNTY OF SUFFOLK, NEW YORK AND EACH PARTY HERETO HEREBY SUBMITS TO AND ACCEPTS THE EXCLUSIVE JURISDICTION OF SUCH COURTS FOR THE PURPOSE OF SUCH SUITS, LEGAL ACTIONS OR PROCEEDINGS. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER

HAVE TO THE LAYING OF VENUE OR ANY SUCH SUIT, LEGAL ACTION OR PROCEEDING IN ANY SUCH COURT AND HEREBY FURTHER WAIVES ANY CLAIM THAT ANY SUIT, LEGAL ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

28.  **Binding Effect**. This Agreement shall not be considered an offer or an acceptance of an offer by Seller, and shall not be binding upon Seller until executed and delivered by both Seller and Purchaser. Upon such execution and delivery, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns.

29.  **Counterparts**. This Agreement may be executed in counterparts and each such counterpart, when taken together, shall constitute a single and binding agreement. Execution of this Agreement may be effected by delivery of facsimiles of signature pages, signature pages delivered in PDF format, or other electronic means, each of which shall be deemed originals in all respects.

*[signatures appear on following page]*

IN WITNESS WHEREOF, the parties have executed this Agreement the date first above written.

SELLER:                    CITY PLUS CARE PHARMACY INC.
                           (D/B/A) HEAL THE WORLD PHARMACY)


                           _____
                           By: NABILA CHAUDHARY, President


                           _____
                           NABILA CHAUDHARY, Individually & Sole
                           Shareholder


PURCHASER:
                           _____
                           SHUMALIA ARSLAN, Purchaser

                           12-20-2021

# EXHIBIT D

# Know Everyone by these Presents,

THAT  NABILA CHAUDHARY

*whose address is* 21 Harding Avenue, Roslyn Heights, NY 11577

*herein referred to as the Transferor, for and in consideration of the sum of* THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000.00) *partly paid to the Transferor, at or before the ensealing and delivery and partly paid as indicated below of these presents by*

SHUMAILA ARSLAN

*whose address is* 38 East Oakdale Street, Bay Shore, NY 11706

*herein referred to as the Transferee, and for other good and valuable consideration, the receipt whereof is hereby acknowledged, sells, transfers, sets over and and assigns to the said Transferee, the following described:*

200 NPV OF CITY PLUS CARE PHARMACY INC. (D/B/A HEAL THE WORLD PHARMACY) A FUNCTIONING PHARMACY

*located*  AT 161-45 Baisley Boulevard, Jamaica, NY 11434

*including inventory, sub-lease, and good will, rights under any, machinery and fixtures of said limited liability company.*

   *TO HAVE AND TO HOLD the same unto the Transferee forever, subject to*

TRANSFEROR SHALL NOT OWN WHOLLY OR THROUGH A SUBSIDARY, OPERATE OR MANAGE A PHARMACY FOR THREE (3) YEAR FROM THE DATE HEREOF

TRANSFEROR ALSO TRANSFERS ALL LICENSES INCLUDING NCDP# 5828679 AND NPI # 1073170361 TO TRANSFEREE

TRANSFERREE SHALL ALSO HOLD HARMLESS AND INDEMNIFY, INCLUDING ATTORNEY FEES, TRANSFEROR FOR ANY CLAIMS AND LIABILITIES, INCLUDING BUT NOT LIMITES TO SALES TAX, LICENSES, RENT, SECURITY, LAWSUITS, VENDOR AND EMPLOYEE CLAIMS

   AND *the Transferor covenants and agrees, to and with the Transferee to* warrant *and defend the sale of said assets hereby sold, unto the Transferee against all and* every *person and persons whomsoever.*

   *The terms, covenants and agreements herein contained shall bind and inure to the benefit of the respective parties hereto, and their respective legal representatives, successors, and assigns.*

STATE of NEW YORK
COUNTY of NASSAU        } ss.:

**NABILA CHAUDHARY**

*being duly sworn, deposes and says, that he resides at*

21 Harding Avenue, Roslyn Heights, NY 11577

*That he is the Transferor and sole shareholder named in the foregoing bill of sale and that he is a President of* **CITY PLUS CARE PHARMACY INC.** *(hereinafter "CORP."), (DBA Heal The World Pharmacy) a Corporation organized under the Laws of the State of New York, having its principal office 161-45 Baisley Boulevard, Jamaica, NY 11434*

*That Transferor is the sole and absolute owner of the property described in the foregoing bill of sale, more specifically enumerated in the schedule hereto annexed and made a part thereof, and has full right and authority to sell and transfer the same.*

*That the said property and each and every part thereof, is free and clear any and liens, mortgages, security interests, levies, debts, taxes or other claims or encumbrances except as set forth in public record of New York State.*

*That this affidavit is made for the purpose and with the intent of inducing* **SHUMALIA ARSLAN** *with address of 38 East Oakdale Street, Bay Shore, NY 11706.*

*Transferee to purchase the property described in the said bill of sale knowing that said Transferee will rely on this affidavit and pay a good and valuable consideration.*

_____  L.S.
**NABILA CHAUDHARY**

1-24-2022

## SCHEDULE OF THE FOREGOING BILL OF SALE

200 NPV Shares of CITY PLUS CARE PHARMACY INC. and all inventory and fixtures located at 161-45 Baisley Boulevard, Jamaica, NY 11434.

The gender and number used in this instrument are used as a reference term only and shall apply with the same effect whether the parties are of the masculine or feminine gender, corporate or other form, and the singular shall likewise include the plural.

IN WITNESS WHEREOF, the Transferor has signed and sealed these presents this 24th day of January, 2022

_Nabila Chaudhary_ _____ L.S.

CITY PLUS CARE PHARMACY INC.
By: NABILA CHAUDHARY, *President*

_Nabila Chaudhary_ _____ L.S.

NABILA CHAUDHARY,
*Individually & Sole Shareholder*

## Acknowledgements

State of New York     )
                      ) SS:
County of Nassau      )

On the 24 day of January in the year 2022, before me, the undersigned, personally appeared

NABILA CHAUDHARY residing at 21 Harding Avenue, Roslyn Heights, NY 11577

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Signature of Notary

1-24-22

JALEEL ADAM
Notary Public, State of New York
Reg. No. 02AD6340200
Qualified in Queens County
Commission Expires April 11, 2024

# EXHIBIT E

An official website of New York State.

Here's how you know ˅



🔍

# Department of State
## Division of Corporations

## Entity Information

Return to Results    Return to Search

**Entity Details**                                                                                              ⌃

**ENTITY NAME:** CITY PLUS CARE PHARMACY INC

**DOS ID:** 5480825

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 01/23/2019

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 01/23/2019

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**

**STATEMENT STATUS:** PAST DUE DATE

**COUNTY:** QUEENS

**NEXT STATEMENT DUE DATE:** 01/31/2021

**JURISDICTION:** NEW YORK, UNITED STATES

**NFP CATEGORY:**

ENTITY DISPLAY    NAME HISTORY    FILING HISTORY    MERGER HISTORY    ASSUMED NAME HISTORY

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** THE CORPORATION

**Address:** 161-45 BAISLEY BLVD, JAMAICA, NY, UNITED STATES, 11434

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| NO PAR VALUE | 200 | $0.00000 |

Agencies App Directory Counties Events Programs Services

# EXHIBIT F

**SHUMAILA ARSLAN**

Date 1-24-22

Pay to the order of Nabila Chaudhary                $ 100000. 00/100

One Hundred Thousand 00/100                                    Dollars

**citibank**

CITIBANK, N.A.

Memo Downpayment

⑆021000089⑆ 68739415479⑈ 0108

541314034068 120115  20220124 000000006873941579
TRN_DEBIT ADUDNAT  100000.00
Roslyn Heights 0413 94004 5413 0007 0062

# EXHIBIT G

NPPES NPI Registry NPI Registry Downloads Help

# Provider Information for 1073170361

The following NPI(s) contain information matching your search criteria. Please select the NPI to view all the data associated with the NPI.

Home / NPI View

**Please Note:** **Issuance of an NPI does not ensure or validate that the Health Care Provider is Licensed or Credentialed. For more information please refer to NPI: What You Need to Know**

### CITY PLUS CARE PHARMACY INC

Other Names:

| | |
|---|---|
| Doing Business As: | HEAL THE WORLD PHARMACY |

Organization Subpart: NO

NPI: 1073170361

Last Updated: 2025-04-15
Certification Date: 2025-04-15

## Details

| Name | Value |
|---|---|
| NPI | 1073170361 |
| Enumeration Date | 2019-05-22 |
| NPI Type | NPI-2 Organization |
| Status | Active |
| Authorized Official Information | Name: SHUMAILA ARSLAN<br>Title: owner<br>Phone: 7184853300 |
| Mailing Address | 16145 BAISLEY BLVD<br>JAMAICA, NY 11434-2900<br>United States |

|  | Phone: 718-276-4311 \| Fax: View Map ⧉ |
|---|---|
| Primary Practice Address | 16145 BAISLEY BLVD JAMAICA, NY 11434-2900 United States<br><br>Phone: 718-276-4311 \| Fax: View Map ⧉ |
| Secondary Practice Address(es) | |

| Health Information Exchange | Endpoint Type | Endpoint | Endpoint Description | Use | Content Type | Affiliation | Endpoint Location |
|---|---|---|---|---|---|---|---|

| Other Identifiers | Issuer | State | Number | Other Issuer | |
|---|---|---|---|---|---|

| Taxonomy | Primary Taxonomy | Selected Taxonomy | State | License Number |
|---|---|---|---|---|
| | Yes | 3336C0003X - Pharmacy - Community/Retail Pharmacy | | |

A federal government website managed by the
U.S. Centers for Medicare & Medicaid Services
7500 Security Boulevard, Baltimore, MD 21244