UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GILEAD SCIENCES, INC., *et al.*,

                    Plaintiffs,

v.

CITY PLUS CARE PHARMACY INC. D/B/A
HEAL THE WORLD PHARMACY, *et al.*,

                    Defendants.

Case No. 25-cv-1469 (RER) (RML)

---

## PLAINTIFFS' OPPOSITION TO THIRD PARTY
## FRIER LEVITT LLC'S MOTION TO MODIFY ASSET FREEZE

Plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC, (together, "Gilead" or "Plaintiffs"), by and through undersigned counsel, respectfully submit this memorandum of law in opposition to the motion of third party Frier Levitt LLC ("Frier Levitt") to modify the Court's Asset Freeze Order (Dkt. No. 18).

The instant motion was *not* filed by any of the Defendants, who are the subject of the Asset Freeze Order. Rather, the motion was filed by Frier Levitt: former counsel to the individual Defendants, whose representation, pursuant to this Court's orders, ended as of June 9, 2025. (Dkt. No. 57.) Frier Levitt is not a party to this litigation and, as of the date it filed the instant motion, is not counsel of record.

Frier Levitt was retained *after* the Asset Freeze Order was issued, and so it does not and cannot assert it had any title or interest in any of the frozen assets before they were frozen. In short, the instant motion is brought by a third-party creditor asserting that it rendered services to

1

the individual Defendants, knowing the individual Defendants' assets were frozen, who would now like to be paid from the frozen funds.

Gilead assumes for purposes of this motion that Frier Levitt has a valid claim for unpaid fees against the individual Defendants. But third-party creditors have no standing to challenge a federal court's asset freeze order simply because they have an unpaid invoice. And in any event, the equities in this case emphatically do *not* support allowing former counsel, who agreed to this representation with their eyes wide open, jumping the line and getting paid immediately, while Defendants proceed *pro se* and Gilead has yet to recover a single dollar. The motion should be denied.

### A. **Frier Levitt Lacks Standing to Challenge the Asset Freeze**

First and foremost, the motion must be dismissed because Frier Levitt makes no attempt to meet its burden of establishing its standing to bring its motion. Every case Frier Levitt cites in its brief involves a *defendant* who is the subject of an asset freeze order moving to amend the freeze to pay fees for *ongoing* or *future* representation of counsel. Defendants who are directly bound by an asset freeze order of course have standing to challenge that order.

But Frier Levitt is not a defendant. Frier Levitt does not cite a single case holding that counsel (let alone former counsel) has standing to challenge, as a third party, an asset freeze order directed at defendants. Gilead is certainly not aware of any such authority.

Frier Levitt has no standing here. Frier Levitt has no cognizable interest that would permit it to challenge the Asset Freeze Order: it does not claim that the order affects any assets to which Frier Levitt has a pre-existing interest, and it does not claim that the order requires Frier Levitt to do anything (or refrain from doing anything). Frier Levitt's only interest is getting paid for services rendered after the freeze was implemented. If mere creditors could challenge a federal freeze order

simply because they would like to get their invoices paid, there would be no end to third-party motion practice over federal asset freezes. The Court should hold Frier Levitt lacks standing and immediately dismiss the motion with prejudice.

**B. Frier Levitt Cites No Authority for a Freeze Being Lifted To Allow a *Pro Se* Party to Pay Former Counsel's Bills**

Even if Frier Levitt had standing, or even if this motion were brought by defendants, there is no authority or basis for releasing frozen funds to pay *former* counsel's fees. As noted above, all cases Frier Levitt cites involve a defendant moving for a release of funds to pay for counsel's *ongoing* or *future* representation in the case. As those cases make clear, and common sense dictates, the equitable purpose of unfreezing assets is to allow otherwise *pro se* defendants to be represented by counsel going forward. For example, in the case Frier Levitt highlights in its brief as "recogniz[ing] the importance of counsel," *SEC v. Dowell*, 175 F. Supp. 2d. 850 (W.D. Va. 2001), the court writes: "This is a complex legal matter, and lawyers are essential to the presentation of issues related to it. Therefore, the court is ordering [a release of fees] necessary to take them through the hearing on the preliminary injunction. The court does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel." *Dowell*, 175 F. Supp. at 856; *see also, e.g.*, *CFTC v. Dinar Corp.*, No. 15-cv-538-WKW, 2016 U.S. Dist. LEXIS 25237, at *24 (M.D. Ala., Feb. 20, 2016) (releasing frozen funds to pay counsel fees "so that [the defendant] could defend this suit" (quotation omitted)).

As the cases Frier Levitt cites in its brief make clear, courts balance the equities of the *plaintiffs* and the *defendants* in deciding whether to release frozen funds to allow defendants to hire or continue utilizing counsel. Here, *former* counsel is directly seeking to be paid for its own *concluded* representation. That would benefit nobody other than former counsel itself, while

3

leaving the individual Defendants proceeding *pro se* and Plaintiffs with less funds against which to secure a recovery. There is no support in law or equity for such an outcome.

### C. The Equities Are Not In Frier Levitt's (or Defendants') Favor

Although the Court need not reach them to resolve the instant motion, there are several additional reasons why the equities also do not support an amendment of the freeze.

First, the Defendants are still in willful contempt of the Asset Freeze Order at issue. As confirmed at the May 21 hearing, Qaisar Chaudhary admitted at his deposition that he had at least two overseas bank accounts that he did not disclose, in violation of the Asset Freeze Order. Frier Levitt represented Mr. Chaudhary at that deposition and at the May 21 hearing where Gilead raised Mr. Chaudhary's continued contempt of the Asset Freeze Order. Having failed to convince their former client to cure their contempt of the Asset Freeze Order, Frier Levitt should not be heard to argue that the equities require that same order be amended to immediately pay their outstanding invoices.

Second, as Frier Levitt acknowledges in its motion, the purpose of the Asset Freeze Order is to ensure that Defendants' funds remain available to satisfy a judgment, and thus a release of funds is disfavored where the frozen funds are already insufficient to satisfy the likely judgment. Under the Lanham Act, Gilead is entitled to elect one of three measures of damages: its actual damages, an accounting of Defendants' profits, or statutory damages. Defendants continue to make it impossible to calculate either of the first two categories of damages – actual damages or their own profits – through their willful contempt of this Court's orders. *See* Dkt. Nos 35, 38. But even on the current record, Gilead is entitled to statutory damages of $2 million per counterfeited mark per type of good. 15 U.S.C. § 1117(c). The counterfeits that Gilead has already recovered from Defendants include at least three counterfeit reproductions of Gilead-registered marks on

4

their fake labels: [logo], GILEAD, and BIKTARVY. Gilead is therefore entitled to statutory damages of at least $6 million, which is far greater than the disclosed frozen assets. *See, e.g., Commodity Futures Trading Ass'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (collecting cases and holding: "According to the record, the frozen assets fell far short of the amount needed to compensate Noble's and Moorgate's customers. This was reason enough in the circumstances of this case for the district court, in the exercise of its discretion, to deny the attorney fee application.")

Third, Frier Levitt knew exactly what it was getting into when it agreed to represent that individual Defendants: the firm not only knew that all of the Defendants' assets had been frozen, but it also knew that that the Defendants' original counsel had filed a pending motion to withdraw based on Defendants' failure to cooperate with counsel.

Fourth, from the invoice that it attaches to its motion, Frier Levitt appears to have recognized the risk of nonpayment from these clients and mitigated that risk by payment of some kind of retainer. *See* Dkt. No. 64-1 (Frier Levitt invoice for work done in May and June 2025, and noting a preexisting negative balance of "-$1769.50," presumably the leftover amount of a retainer or other advance payment made when the firm was retained in April 2025, and already applied against fees accrued in April).[1] In negotiating for that retainer, Frier Levitt willingly took on the risk – knowing that that the Asset Freeze Order was in place – that the retainer would be insufficient to pay for even its brief representation of the individual Defendants. Equity does not demand that the funds available for Gilead's recovery be reduced by the amount Frier Levitt undershot its retainer agreement.

---

[1] Gilead notes that if Frier Levitt's retainer was paid by any of the Defendants, such payment was itself a violation of the Asset Freeze Order.

5

Fifth and finally, Frier Levitt's claim that "representation of the Individual Defendants by competent counsel facilitated the discovery process and the issues and defenses relevant to this complex matter" is, to put it mildly, overstated. (Dkt. No. 64 at 4). The individual Defendants remain in gross, willful contempt of all of this Court's orders, have refused to participate in document discovery (including refusing to disclose their counterfeit supplier), and, as demonstrated at the May 21 hearing, committed serial perjury at their depositions. Indeed, after filing a single letter on the docket (Dkt. No. 54), Frier Levitt used its first opportunity before this Court to orally move to withdraw as counsel – an oral motion it made so quickly that it was heard alongside *original* counsel's still-pending motion to withdraw. Gilead assumes for purposes of this motion that the blame for this sad state of affairs rests entirely with the Defendants themselves, and not any of their counsel. But even under that assumption, this litigation is a poster child for how competent counsel can be rendered ineffective by dishonest clients. This is decidedly *not* a case where former counsel can point to their accomplishments during the course of litigation, and then argue that those accomplishments justify an equitable exception to the rule that frozen assets are held for the benefit of the victim, not the defendants' lawyers.

## CONCLUSION

For the foregoing reasons, the Court should deny Frier Levitt's motion to modify the asset freeze in its entirety.

6

Dated: June 17, 2025    PATTERSON BELKNAP WEBB & TYLER LLP

By:  */s/ Timothy A. Waters*_____

Geoffrey Potter
Timothy A. Waters
Anna M. Blum

1133 Avenue of the Americas
New York, NY 10036-6710
T:  212-336-2000
F:  212-336-2222
E: gpotter@pbwt.com
    twaters@pbwt.com
    ablum@pbwt.com

*Attorneys for Plaintiffs*
*Gilead Sciences, Inc. and*
*Gilead Sciences Ireland UC*

## CERTIFICATION OF WORD COUNT COMPLIANCE

  I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law contains 1,773 words (excluding the caption and signature block), and that I have relied upon Microsoft Word's word count for purposes of this certification.

                __*/s/ Timothy A. Waters*__
                Timothy A. Waters

**CERTIFICATE OF SERVICE**

   I hereby certify that I have served a copy of the foregoing upon Frier Levitt LLC by causing the foregoing to be sent by email to mmodaferri@frierlevitt.com and by FedEx to Frier Levitt, 84 Bloomfield Ave, Pine Brook NJ 07058.  I hereby further certify that I have served a copy upon the Defendants by causing the foregoing to be sent by email to kaiserkaiser786@aol.com and by FedEx to Qaiser, Nabila, and Hamza Chaudhary, 21 Harding Ave, Roslyn Heights NY 11577.

                  */s/ Timothy A. Waters*
                  Timothy A. Waters