UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GILEAD SCIENCES, INC., *et al.*,

        Plaintiffs,

v.

CITY PLUS CARE PHARMACY INC. D/B/A HEAL THE WORLD PHARMACY, *et al.*,

        Defendants.

Case No. 25-cv-1469 (RER) (RML)

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO AMEND ASSET FREEZE ORDER**

Plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC, (together, "Gilead" or "Plaintiffs") respectfully submit this opposition to the letter-motion filed by Nabila Chaudhary, Qaiser Chaudhary, and Hamza Chaudhary (together, the "Chaudharys" or "Individual Defendants") seeking to modify the asset freeze to permit the Chaudharys to pay their attorneys' fees, ECF No. 89.

Since the day this case was filed, the Individual Defendants have been in gross and willful contempt of this Court's asset freeze orders – and their contempt has only gotten worse as time has gone on. The Individual Defendants have openly lied to this Court and to Gilead about their assets in in-person appearances, in deposition testimony, and in sworn interrogatory responses recently served by their current counsel. In fact, they said they had no money to pay their *former* counsel – and then came up with a $50,000 retainer for their *new* counsel. And, of course, the Individual Defendants have been caught red-handed suppressing texts in which

1

Hamza Chaudhary instructed the pharmacist-in-charge of Heal the World to destroy documents and lie to the Individual Defendants' lawyers if they were to contact him. And yet the Chaudharys now come before this Court and argue that as a matter of equity the Court should release additional monies – funds being held to preserve Gilead's right to a recovery – to pay their third set of counsel. The notion that the balance of the equities tips in favor of the Individual Defendants is frivolous to the point of insulting this Court's authority. Their motion should be denied in its entirety and with prejudice.

## PROCEDURAL POSTURE AND FACTUAL BACKGROUND

Gilead will set forth fully the Individual Defendants' fraud on this Court in its forthcoming motion for case-ending sanctions. For present purposes, Gilead presents in summary fashion some of the most egregious aspects of the Individual Defendants' fraud and contempt with regard to this Court's Asset Freeze Order.

**A. The Individual Defendants' Fraud in Support of Their Campaign to Hide Their Assets**

- On March 19, 2025, Gilead served the Individual Defendants with this Court's Asset Freeze Order, which required the Individual Defendants "immediately upon receipt of this Order" to disclose all their assets, including real estate. ECF No. 18 ¶ 5.

- On April 4, 2025, the Individual Defendants, through counsel, submitted asset disclosures. The Individual Defendants claimed they had a total of $79,000 in liquid assets among the three of them; the only other assets disclosed were the family home in New York and two motor vehicles. No bank accounts or overseas assets were disclosed. ECF No. 36-1 at 41–46.

- On April 16, 2025, the Individual Defendants, through counsel, served "revised" asset disclosures, now claiming that the Individual Defendants had a total of approximately $1 million in liquid assets. No overseas assets or additional real estate were disclosed.

- Gilead eventually located, through third-party subpoenas, over **$2.4 million** in liquid

2

- assets sitting in the Chaudhary's U.S. bank accounts, which funds are now with the Clerk of the Court.

- Gilead also learned from subpoenaed bank records that the Chaudharys were moving hundreds of thousands of dollars to their U.S. accounts from at least two different bank accounts located in Pakistan.

- When confronted at his May 15, 2025 deposition, Qaiser Chaudhary admitted he had accounts at MCB Bank and Silkbank in Pakistan, that he owned real estate in Pakistan that generated rent that was deposited into those accounts, and that he was in the process of moving the family's wealth from Pakistan into the United States. Ex. A (Excerpted Qaiser Chaudhary Dep. Tr.) at 315:25-316:9.

- On August 14, 2025, the Individual Defendants in sworn interrogatory responses claimed they could not provide the account numbers and balances for their Pakistani bank accounts. *See* ECF No. 87 at 2. They claimed in verified document responses that the Pakistani banks would not release that information because the accounts were frozen. *Id.*; ECF No. 87-1 at 8 (Qaiser Chaudhary responding to request regarding bank accounts he owns by saying he could not "access any other responsive documents because the relevant accounts are frozen"); ECF No. 87-3 at 8 (Nabila Chaudhary providing same response).

- On August 18, 2025, Gilead stated in a public filing that Gilead never served the asset freeze on those Pakistani banks, and submitted Qaiser's deposition testimony in which he swore those accounts were not frozen. ECF No. 87 at 2; ECF No. 87-7. Gilead also made the point that even if those accounts had been frozen (they were not), the idea that the Chaudharys could not even find an account number for those accounts is an obvious lie. ECF No. 87 at 2.

- On August 20, 2025, the Individual Defendants provided by e-mail account numbers for two Pakistani bank accounts. But those accounts are with banks in Pakistan that are ***different than the previously undisclosed banks in Pakistan – MCB and Silkbank***. Ex. B (email from defense counsel listing accounts at Standard Chartered and National Bank of Pakistan). The Individual Defendants still have not disclosed any information about the MCB and Silkbank accounts that Gilead uncovered.

- The Individual Defendants also stated in their sworn interrogatory responses that the family had recently sold a pharmacy for $125,000 – money they received *after* the asset freeze went into effect, but that does not appear in any frozen account. ECF No. 87-5 at 3. The Individual Defendants have failed to account for the whereabouts of those funds.

B. **The Individual Defendants' Fraud With Regard to Prior Motions to Amend the Asset Freeze and Payments for Former Counsel**

3

- Immediately after retaining their first counsel, the Individual Defendants insisted they had no money for living expenses. Gilead immediately and in good faith stipulated to a release of funds, which Gilead filed on March 27, 2025. ECF No. 24.

- The Individual Defendants identified an account owned by Heal the World Pharmacy from which over $32,000 would be withdrawn for the purpose of paying both business and family expenses. *Id.*; *see* Ex. A at 300:2-7, 301:6-17, 303:16-304:3 (Qaiser Chaudhary testifying he spent approximately $2,500 a week on miscellaneous living expenses, as well as spending $5,000 in a five-day period for "personal use").

- On April 17, 2025, the Individual Defendants moved to release additional funds for their personal expenses, supported by a sworn declaration from Qaiser Chaudhary in which he testified that he currently owned Heal the World Pharmacy. ECF No. 37.

- After the Court rejected their bid to use more frozen pharmacy funds for personal expenses and ordered the Defendants to produce pharmacy records, Qaiser Chaudhary filed a new sworn declaration in which he testified that he *never* owned Heal the World Pharmacy, and that his wife had sold the pharmacy years prior. ECF No. 54-1.

- On May 6, 2025, former counsel for the Individual Defendants moved to have the firm's prior bills paid from frozen funds, relying on statements from the Individual Defendants that they had no money to pay their bills. ECF No. 54.

- At a May 9, 2025 court appearance, counsel stated that Mr. Chaudhary had just informed him they his family had no money to feed themselves, and that they were "living off black coffee." May 9, 2025 Tr. at 48:8–9

- Two months later, the Individual Defendants somehow paid current counsel a $50,000 retainer, $30,000 of which was in cash. The Individual Defendants offer no evidence as to the origin of those funds.

C. **The Individual Defendants' Ongoing Willful Contempt of the Asset Freeze Orders**

- On June 12, 2025, this Court ordered the Individual Defendants to immediately identify and produce years of bank records regarding their foreign assets, and to immediately transfer all of their Pakistani assets either to the Clerk of the Court, or to a frozen U.S. account where they could then be transferred to the Clerk. ECF No. 67 ¶¶ 2–3. The Individual Defendants have made *no* effort to comply, and continue to this day to be in open, brazen contempt of that Court order.

- As described above, the Individual Defendants never disclosed all of their U.S. assets as required by the Asset Freeze Order, and have never disclosed the value of any of

4

their overseas assets, which include at minimum four bank accounts and multiple real-estate holdings.

## ARGUMENT

### A. The Individual Defendants Cannot Amend the Asset Freeze Order While They Remain Willfully in Contempt of It

This Court has already recognized that the Individual Defendants are in contempt of its Asset Freeze Order. *See* ECF No. 60 (directing Plaintiffs to file a proposed order with an interim remedy for violation of the asset freeze order); ECF No 67 (granting Plaintiffs' proposed order). The Individual Defendants do not and cannot deny that they are in continued active, willful contempt of the Asset Freeze Order – they simply choose not to address that inconvenient fact when coming to this Court, hat in hand, to ask for the release of additional funds.

By ignoring that elephant in the room, the Individual Defendants entirely fail to meet any of their burdens in moving to amend an asset freeze order, including the most basic: a full disclosure of all their assets. Any "determination to unfreeze assets for the purposes of living expenses or defense fees requires consideration of whether the defendants have other available funds by which to pay their attorneys, which requires full financial disclosure by the defendants." *F.T.C. v. 4 Star Resolution, LLC*, 2015 WL 4276273 (W.D.N.Y. July 14, 2015) (collecting cases). Here, the Individual Defendants have fraudulently misrepresented their finances from the start, in knowing violation of the Asset Freeze Order. Today, they continue to hide at least the initial installment of the $125,000 payment that they received from the sale of a pharmacy *after* the freeze was implemented – and they continue to actively hide and lie about the substantial (and growing) assets that they hold overseas. They clearly have not met their burden of disclosing all their assets before moving to modify the asset freeze orders. Their motion should

5

Case 1:25-cv-01469-RER-RML   Document 90   Filed 09/05/25   Page 6 of 13 PageID #: 1428

be denied on that ground alone.[1]

But even more fundamentally, the Individual Defendants rely entirely on the "equities" in asking for the asset freeze to be modified. That the Individual Defendants would make an equitable argument while ignoring their gross, ongoing, and willful contempt of the Asset Freeze Order is absurd. *See* Ex. C (Excerpted May 21, 2025 Transcript) at 36:10-17 (The Court denying the Individual Defendants' oral motion to modify asset freeze: "To get equity, you have to do equity. Right? You've got to come to the Court with clean hands, you have to cooperate, and there has been zero cooperation to this point.").

It is difficult to imagine a set of defendants who are less entitled to make equitable arguments than the Individual Defendants here. These are the Defendants who looked the Court in the eye and claimed more money had to be released because their family was starving and subsisting off "black coffee," while they were actively hiding over two million dollars in liquid cash they had in U.S. bank accounts along with a still-unknown overseas fortune, hoping Gilead and the Court would not find out about it.

These are the Defendants who have taken no steps to comply with this Court's order that they transfer their foreign assets to the Clerk of this Court, and then lied under oath in their

---

[1] The Individual Defendants also briefly argue that they have shown the frozen funds are not "tainted" by their counterfeiting. ECF No. 89 at 3. To make that argument they rely on the already-debunked arguments set forth by their original counsel, who claimed to "calculate" the Individual Defendants' profits while failing to produce any documentary records that would allow anyone to make that calculation. *See* ECF No. 37 (original motion to amend freeze); ECF No. 38 (Gilead's response). This Court has already rejected that argument. ECF No. 39 (denying motion to amend freeze). To this day, the Individual Defendants continue to refuse to produce *any* documents regarding their counterfeiting or sale of Gilead-branded medicines, in violation of a number of this Court's orders and their discovery obligations.

6

interrogatory responses, pretending to be unable to even find their account numbers.

These are the Defendants who at the beginning of this case convinced Gilead and this Court to release Heal the World Pharmacy's money, from a pharmacy business account the Chaudharys identified, to spend on their personal family expenses. Their request was supported by sworn testimony that the Chaudharys owned the pharmacy and its funds – but after they spent the pharmacy's money and were asked to produce the pharmacy's business records, they turned around and submitted sworn testimony that they had nothing to do with the pharmacy and had sold it years ago.

The Court should find that the equities emphatically do not lie with the Individual Defendants and deny their motion in its entirety.

### B. The Individual Defendants' Fraud and Contempt Has Continued Unabated Under New Counsel

The Individual Defendants' current counsel briefly argue that the freeze should be amended because their "representation has advanced this action substantially as to the issues and defenses relevant to this complex matter." ECF No. 89 at 3. Even if that were true, it would not justify equitably amending the asset freeze order in light of the Individual Defendants' open contempt and fraud on this Court. But it is difficult to fathom to what counsel is referring. The Individual Defendants remain in open contempt of every Order of this Court; they have produced a total of 14 pages of documents (excluding publicly filed documents and documents Gilead gave to prior defense counsel), including zero emails and zero text messages; and they served sworn interrogatory responses and responses to Gilead's discovery requests filled with obvious lies. Discovery is now closed, and Gilead has nothing to show for it other than an indelibly

perjury-stained testimonial record and no documents.

The closest current counsel comes to listing an achievement during the course of their representation is that they "identified two additional bank accounts in Pakistan that were previously unknown to Plaintiffs and the account information was immediately turned over to Gilead's counsel." ECF No. 2. Even that modest claim does not stand up to scrutiny.

As an initial matter, the Individual Defendants were ordered to disclose all their overseas assets, to provide years' worth of bank statements for their overseas accounts, and to immediately move those assets to the Clerk of this Court. ECF No. 67. Simply stating two account numbers, without providing bank statements, balances, or taking any steps to transfer those funds is not laudable progress: it serves only to prove the extent of their willful contempt.

But more than that, this is not a story of the Individual Defendants coming even a little bit clean. Rather, this is a story of the Individual Defendants once again attempting to commit fraud on this Court and botching the job. As noted above, Qaiser Chaundry admitted at deposition that his family had accounts at Pakistani banks MCB Bank and Silkbank. *Supra* at 3. Current counsel served sworn interrogatory and document responses in which the Individual Defendants told the obvious, provable lie that they could not tell us their account numbers at those banks because those accounts were frozen (they were not). *Id.* After Gilead called out that lie in a public filing, current counsel provided two account numbers for what counsel stated were Pakistani banks. In a subsequent meet-and-confer call, it became clear that counsel thought they had disclosed the account numbers for the previously disclosed accounts; they had no idea those two account numbers were for *two new, previously undisclosed Pakistani banks*.

The Individual Defendants clearly revealed those two new Pakistani accounts by mistake,

8

having once again tripped themselves up in their ever-shifting series of lies. The Individual Defendants had just been caught red-handed lying about the foreign bank accounts that Gilead had already uncovered, and they clearly intended to drip out tidbits of information about those already-revealed accounts, without providing anything of substance that would allow Gilead or the Court to actually access those funds. But when they told counsel their account numbers, they accidentally provided the numbers for two *other* foreign accounts they had been hiding from Gilead and the Court (and, no doubt, counsel). In short, new counsel did not succeed in convincing their clients to comply with the Asset Freeze Order: rather, new counsel were unwittingly used by their clients in a botched attempt to continue the Individual Defendants' contempt and fraud upon this Court.

  The Individual Defendants are on their third set of counsel, and the record is clear that they have not changed their pattern of lying to their lawyers and using them to commit fraud on this Court. Gilead can only guess at what was discussed in the *ex parte* conversations this Court had with prior counsel when they moved to withdraw, but the public record in this case now includes series of texts in which Mr. Chaudhary instructed the pharmacist-in-charge of Heal the World Pharmacy to delete documents and *lie to the Individual Defendants' own lawyers* when they reached out to him. ECF No. 87-8. The Individual Defendants' campaign of willful contempt and fraud upon this Court predated current counsel, continued unabated through their representation, and will doubtlessly continue after current counsel become the third set of lawyers to show good cause why they should be permitted to withdraw from their representation.

  Finally, Gilead notes that current counsel came into this representation with their eyes wide open, knowing about the asset freeze and the short-lived representations of two prior law

9

firms. This Court previously granted in part prior counsel's motion to have his fees paid, but limited the payment to the time when counsel was required, per the Court's order, to continue his representation *after* moving to withdraw. Here, current counsel wants to be paid for work while voluntarily representing the Individual Defendants, presumably with the intention of getting paid from frozen funds for future work as well. There is simply no basis, equitable or otherwise, to modify the freeze, and that request should be denied.

### C. Gilead Will Be Irreparably Prejudiced by the Requested Modification

The Asset Freeze Order was issued to prevent irreparable harm to Gilead by ensuring the availability of funds for Gilead's recovery. As noted above, to date, the Clerk of the Court has received approximately $2.4 million in frozen funds. Even with the Individual Defendants' obstructionism and failure to produce documents, Gilead's damages already eclipse the assets it has frozen.

Precisely because counterfeiters are known to destroy documents and undermine the civil process, the Lanham Act provides for statutory damages. Specifically, Gilead is entitled to an award of up to "$2,000,000 per counterfeit mark per type of goods or services sold" in cases of willful infringement. 15 U.S.C. § 1117(c). Courts have "considerably broad discretion" in awarding statutory damages under Section 1117(c), *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 22 (2d Cir. 2012), and in awarding statutory damages courts should take into account the "deterrent effect on the infringer and third parties," *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 259 (2d Cir. 2021).

Here, Gilead has already identified, through patient reports and the Court-ordered seizure, three bottles of Gilead-branded medicines sold by (or about to be sold by) the Defendants, each

10

with entirely counterfeit labels bearing multiple counterfeit Gilead trademarks. The statutory damages available to Gilead as the result of the Individual Defendants' willful counterfeiting dwarfs the frozen assets being held by the Clerk of Court. Even if the Individual Defendants had not long ago burned through whatever equitable currency they once had with the Court, as a rule they should not be permitted to use funds set aside for Gilead's recovery in order to pay their attorneys' fees. *Sec. & Exch. Comm'n v. Callahan*, No. 12CV1065ADSAYS, 2015 WL 10853927, at *2 (E.D.N.Y. Dec. 24, 2015) ("Courts have repeatedly denied requests by defendants to lift asset freezes to obtain funds for attorneys' fees where the frozen assets fall short of the amount necessary to compensate the victims of their fraud schemes.").

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Individual Defendants' motion to modify the Court's Asset Freeze Order in its entirety.

11

| | |
|---|---|
| Dated: September 5, 2025 | PATTERSON BELKNAP WEBB & TYLER LLP |
| | By: _/s/ Timothy A. Waters_ |
| | Geoffrey Potter<br>Timothy A. Waters<br>Anna M. Blum |
| | 1133 Avenue of the Americas<br>New York, NY 10036-6710<br>T:  212-336-2000<br>F:  212-336-2222<br>E: gpotter@pbwt.com<br>   twaters@pbwt.com<br>   ablum@pbwt.com |
| | *Attorneys for Plaintiffs*<br>*Gilead Sciences, Inc. and Gilead Sciences Ireland UC.* |

**CERTIFICATION OF WORD COUNT COMPLIANCE**

      I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law contains 3,361 words (excluding the caption and signature block), and that I have relied upon Microsoft Word's word count for purposes of this certification.

                                                  */s/ Timothy Waters*
                                                  Timothy Waters